## BIVINS v. OLDHAM.    (No. 9285.)

(Court of Civil Appeals of Texas. Ft. Worth. April 10, 1920. Rehearing Denied May 15, 1920.)

I. **Partnership** ☞56—**Evidence held to sustain finding of ostensible partnership.**

In an action against an alleged partnership, finding of the jury that one of the defendants was estopped by his conduct to deny that he was a partner *held* supported by evidence.

2. **Partnership** ☞36—**One whose name was improperly used should notify persons relying on partnership.**

A reasonably prudent man, knowing that his name was improperly used in a business as partnership, would have notified all persons whom he knew, or had reason to think, were relying on the existence of the partnership.

3. **Partnership** ☞218(3)—**Answer held to sufficiently show that other defendants held themselves out as partners.**

In an action by lessor against lessees and assignees of lease, answer of lessee, which adopted the pleadings of the plaintiff and prayed for judgment against assignees, *held* sufficient to authorize the trial court to submit the issues as to whether one of the alleged assignees had allowed the other assignee to represent that he was a partner, and whether or not lessees relied upon such representations and holding out.

4. **Appeal and error** ☞1052(5)—**Introduction of evidence harmless, in view of determination.**

In an action against alleged partnership, admission of testimony that one of defendants had told witness that he and the other defendant were partners, if error, was not material, where the jury found that defendants were not actual partners, but only ostensible partners.

5. **Partnership** ☞50 — **Statement of alleged partner as to partnership relation held admissible.**

In an action against alleged partners, on the question of whether or not one of defendants permitted himself to be held out as a partner with the other defendant, it was permissible to permit witness to testify that such other defendant told him that defendants were partners; there being other facts shown tending to sustain the claim of estoppel.

6. **Trial** ☞60(1)—**Evidence may be introduced, though dependent on subsequent showing.**

It is often necessary to introduce evidence whose admissibility depends on other evidence subsequently to be introduced, and if such later evidence is not forthcoming the trial court will, on motion, or of his own volition, exclude the preliminary evidence.

7. **Appeal and error** ☞1050(1)—**Admission of evidence held harmless.**

In an action against alleged partners, where there was evidence that one of the defendants had signed the name of the other to a contract of sale, and had sent a copy thereof to such other defendant, who received it at his office, and that subsequently the first defendant signed checks apparently upon a firm consisting of the names of the two defendants, and drew drafts on the other defendant in such firm name, which were paid, admission in evidence of a statement of the first defendant that defendants were partners, if error, was harmless.

8. **Appeal and error** ☞882(8)—**No complaint of testimony drawn out by own counsel.**

A party cannot complain on appeal of testimony given in response to a question propounded by his own counsel.

9. **Appeal and error** ☞1052(5)—**Admission of evidence harmless, in view of determination.**

In an action against alleged partners, admission in evidence of a statement of a son of one of the defendants that the defendants were partners, if error, was harmless, where the

jury found that defendants were not actual partners, but only that one of the defendants had permitted himself to be held out as a partner.

**10. Partnership ☞56—Finding that ostensible partner knew of use of name held sustained by evidence.**

In an action against alleged partners, evidence *held* to support finding that one of the defendants had actual notice that the other defendant was signing his name to contracts under a firm name.

**11. Appeal and error ☞1040(10)—Overruling special exception to petition held harmless, if error.**

Failure of court to sustain a special exception to plaintiff's petition, wherein she alleged that she had a preference lien to secure money due for pasturage, was harmless, if error, where such question was not submitted to the jury, and did not enter into the judgment rendered.

Appeal from District Court, Taylor County; Joe Burkett, Judge.

Suit by Mrs. Minnie H. Oldham, in her individual capacity and as administratrix of R. H. Oldham, deceased, and as guardian of minor children, against Lee Bivins and others. Judgment for plaintiff, and the named defendant appeals. Affirmed.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellant.

D. M. Oldham, Jr., W. D. Girand, and Dallas Scarborough, all of Abilene, for appellee.

BUCK, J. This is a suit by Mrs. Minnie H. Oldham, in her individual capacity and as administratrix of the estate of R. H. Oldham, deceased, and as guardian of her two minor children, against W. S. Scott, J. E. Renfro, Tom Renfro, Lee Bivins, and R. L. Allen, for balance due under a lease contract covering 8,721 acres of ranch land in Stonewall county, plaintiff alleging: That on the 28th day of April, 1916, she entered into a written contract with Scott and Renfro Bros. to lease said lands for farming and grazing purposes for a term of five years, beginning November 15, 1917, for an annual rental sum of $1,745.40, the first payment being due November 15, 1917, and annually thereafter in advance, said lease further providing for 10 per cent. attorney's fees in default of payment. That in the fall of 1917 the defendants, Renfro Bros., transferred and assigned their lease to Bivins & Allen, along with their cattle and live stock located and grazing upon said premises. That Bivins & Allen thereafter operated said ranch. That as a part of said consideration for such transfer, Bivins & Allen assumed the obligations of said lease contract, and assumed to pay the annual rental. That if Bivins and Allen were not actually partners Bivins was estopped to deny partnership for the following reasons:

(1) That at the time they purchased said live stock running on said ranch, having paid $30,000 therefor, said live stock had been grazing upon said ranch for several months; that plaintiff was entitled, under the statutes of the state of Texas, to a first and preference lien to secure the amount of money due as pasturage, and that they accepted said live stock with the knowledge of said indebtedness and said lien; that when the first payment came due in November, 1917, defendant Allen drew his draft on November 23, 1917, payable to plaintiff, on the defendant Lee Bivins at Amarillo, Tex., which was refused. .

(2) That the defendant Bivins & Allen had a bill of sale for said live stock, conveying to them in the name of Bivins & Allen, and caused same to be recorded on the public records of Stonewall county.

(3) That the first payment for the live stock, made on or about November 12, 1917, was by check or draft drawn by R. L. Allen in the name of Bivins & Allen against an Amarillo bank, which check was duly honored and paid by the defendant Bivins, with full notice that it grew out of this ranch deal.

(4) That Lee Bivins furnished money to pay part of the feed bills and expenses for running said ranch and care for said live stock, and caused plaintiff to believe and rely upon the fact that he was a partner with R. L. Allen.

(5) That before she would permit said lease contract to be transferred and assigned by Renfro Bros. to Bivins & Allen, she had her agent D. M. Oldham, Jr., make inquiries as to the responsibility of Lee Bivins, and found out that he was responsible financially.

Plaintiff also pleaded that the defendant Bivins was negligent, in that after he had knowledge that R. L. Allen had signed the name of Bivins & Allen, by J. P. Smith, to the original contract of sale, dated September 17, 1917, and the bill of sale dated November 12, 1917, and having the same recorded in the bill of sale records of Stonewall county, and after making the first payment on the cattle, evidenced by a check dated November 12, 1917, for the sum of $3,324.44, and after furnishing money to pay for feed and other expenses in caring for said cattle, and in permitting these facts to become known to plaintiff and her agent, D. M. Oldham, Jr., and permitting them to rely upon and believe that he was a partner with R. L. Allen in the ranch, and, after refusing the check for the annual rental of $1,745.40, he refused to notify plaintiff that he was not a part owner, all of which facts constituted negligence. Plaintiff also alleged that prior to Allen's coming to Stonewall county that defendants R. L. Allen and Lee Bivins had handled cattle together, in the purchase of live stock in and about Amarillo, and had

borrowed large sums of money from the St. Joseph Cattle Loan Company, of St. Joseph, Mo.; that when said Allen came to Stonewall county, under the assumed name of J. P. Smith, defendant Bivins had notice of what he intended to do, and knew that he intended to purchase the ranch in the name of Bivins & Allen, if possible; that with full notice of the fact that Allen used such schemes and devices, the defendant Lee Bivins did thereafter, on or about May, 1918, send to Stonewall county and have said cattle gathered from said ranch and shipped and driven away and converted to his individual use, depriving plaintiff of her security, and converted said cattle in such a manner as to make him personally liable for the lease money; that after the failure of defendants to pay said lease money plaintiff leased land to A. C. Pierson for a period of five years, commencing January 1, 1919, for the sum of $1,200 per year for the years 1919 and 1920, and $1,500 for the years 1921, 1922, and 1923, which was the highest and best price obtainable for the land under the existing conditions. Plaintiff sued for the difference due under the original contract and what she would actually receive under the Pierson contract together with the 10 per cent. attorney's fees.

Scott was dismissed from the suit, it having been shown that prior to the sale by Renfro Bros. to Allen, Scott had sold out his interest to Renfro Bros. and had left the state.

The defendants J. E. and Tom Renfro filed their answer by the same attorney representing plaintiff, said answer consisting of a general demurrer and general denial of the matters set up in the answer of the defendants, and of the adoption of the facts pleaded in the plaintiff's petition, and alleging such facts to be true to the best of their knowledge and belief, and they adopted and made such pleadings a part of their answer. They further pleaded that during the month of September, 1919, the defendant R. L. Allen, under the assumed and fictitious name of J. P. Smith, came to Stonewall county, purporting to represent Bivins & Allen of Amarillo, Tex., a copartnership composed of Lee Bivins, who wanted to buy a ranch in Stonewall county; that he came to defendants Renfro Bros. with the proposition to buy them out for a large sum of money, about $35,000, for the live stock, cattle, horses, mules, hogs, farming implements, and ranch fixtures; that Lee Bivins was a very wealthy and responsible man, good and solvent for his debts, and that Allen was also in the same condition financially, and that Bivins and Allen were partners operating in the cattle business under the name of Bivins & Allen; that relying upon these representations as true, they did agree to sell to Bivins and Allen said live stock, and transfer the lease on the pasture, with the consent of Mrs. Oldham,

to them. The answer contained several special exceptions, one of which excepted to that part of the petition which alleged the preference lien on the cattle on the ranch for the payment of the pasturage.

The defendant Lee Bivins answered by a number of special exceptions and by general denial, and specially denied the partnership, denying that he was interested as agent, partner or owner, or part owner with the defendant R. L. Allen in said cattle or in said lease contract at any time, and that he did not, by any act or conduct, leave plaintiff to so infer, nor was he guilty of any negligence whereby plaintiff was caused to suffer any damages, as alleged by her. He alleged that on October 5, 1917, Allen executed and delivered to the St. Joseph Cattle Loan Company a chattel mortgage covering the live stock purchased by him from Renfro Bros., to secure the payment of part of the purchase price of said cattle, to wit, six notes for $5,000 each, and one note for $3,621.95, due April 20, 1918, all dated September 24, 1917, said mortgage being given by R. L. Allen alone, and having indorsed thereon an affidavit that he was the true and lawful owner of said live stock, which mortgage and affidavit were filed for record on October 22, 1917, and duly registered in the chattel mortgage records of Stonewall county, and that plaintiff and all other persons were charged with notice as to the true ownership of said cattle, as well as the mortgage lien of the St. Joseph Cattle Loan Company and the amount due said loan company; that at all times after said date the reasonable market value of said cattle was never sufficient to satisfy said mortgage lien and indebtedness; that on account of the drought conditions, said cattle later began to die, and the defendant Lee Bivins, for the protection of said mortgage lien, he being an indorser of the paper due the St. Joseph Cattle Loan Company, had said cattle gathered, and that the reasonable market value of said cattle was scarcely 50 per cent. of the indebtedness held by the loan company; and that plaintiff was therefore not damaged, even if she could claim a lien in any respect, which defendant did not admit, but in all things denied.

Upon a trial between the plaintiff on the one hand and Renfro Bros., R. L. Allen, and Lee Bivins on the other, the case was submitted to the jury on three special issues, which were as follows:

(1) Were Lee Bivins and R. L. Allen partners in the cattle business in the transaction wherein the Renfro lease was assigned to Bivins and Allen by a contract dated the 12th day of September, 1917? To which the jury answered, No.

(2) As between the defendants Renfro Bros. and Lee Bivins, did Lee Bivins permit R. L. Allen to represent to Renfro Bros. that Lee Bivins was a partner with R. L. Allen

in the purchase of the cattle and lease in question? To which the jury answered, Yes.

(3) If you find that Lee Bivins did permit R. L. Allen to represent and hold out that Bivins was a partner with Allen, then did Renfro Bros. rely and act upon such representations and holding out? To which the jury answered, Yes.

Upon this verdict, the court returned a judgment for the plaintiff for $3,762.62 against the defendants J. E. and Tom Renfro and R. L. Allen. The plaintiff was denied a judgment against Lee Bivins. Upon Renfro Bros.' plea against Allen and Bivins, judgment was rendered in a like amount for them as against Bivins and Allen. From which judgment, Lee Bivins has appealed. ·

Appellant's first assignment is directed to the failure of the court to give a peremptory instruction in his favor. It is urged that since the undisputed evidence shows that defendants Lee Bivins and R. L. Allen were not partners in fact, and that the defendant Lee Bivins had no personal negotiations with the plaintiff or the defendants Renfro Bros., he was entitled to an instructed verdict in his favor. That the evidence further failed to show that defendant Lee Bivins had, by act or conduct, or failure to speak when it was his duty to speak, misled the plaintiff to her injury or the defendant Renfro Bros., and since the pleadings did not warrant the finding as to estoppel, so far as concerns the defendants Renfro Bros., the defendant Bivins was entitled to a peremptory instruction upon the issue of partnership by estoppel.

Since the jury found that Bivins and Allen were not partners in the cattle business in the transaction wherein the Renfro lease was assigned to Bivins & Allen, we may pretermit any discussion of those assignments and propositions thereunder which assign error on the ground of the insufficiency of the evidence to sustain such allegation, and direct our attention to those assignments alleging error involved in the trial of the issues between Renfro Bros. and Lee Bivins.

On the 17th day of September, a man calling himself J. P. Smith, but in fact R. L. Allen, made a trade with Renfro Bros. for their cattle and other personal property on the Oldham ranch, and a transfer of the lease contract held by Renfro Bros. with the owner. A written contract was duly entered into, signed by Renfro Bros. and by Bivins & Allen, by J. P. Smith. The written contract set out the terms of the conditions of the trade, and purported to be for the benefit of Bivins & Allen, a copartnership. At this time R. L. Allen, still using the assumed name of J. P. Smith, drew a draft on Bivins & Allen through a bank at Amarillo, and signed it "Bivins & Allen, by J. P. Smith." This draft was for $3,000 earnest money. This draft was on September 21st presented to appellant Bivins, and paid by his person-

al check. Bivins testified that he did not see the checks and drafts drawn on him signed by Allen, but that such checks were paid by his office man under his instructions.

J. E. Renfro testified that the contract of sale, transferring the cattle and the lease to Bivins & Allen was made in triplicate, and that one of the copies was put in an envelope by Allen and addressed to Lee Bivins and put in the post office. At the time of the trial, Allen testified by deposition, and in this deposition he acknowledged that he did sign the contract, "Bivins & Allen, by J. P. Smith." He stated that he thought he had the original contract somewhere, but did not know just where it was; that all his stuff was then in storage, and he thought the contract was in a trunk in the warehouse. Mr. Bivins testified as a witness, denying that he had received this contract at the time the deal was made, but the contract used in evidence was taken from his files in Amarillo. He testified:

"I don't think I ever seen the contract. I don't think he ever brought it up there. I said I never received any contract by mail. I generally receive my mail from the bookkeeper. The bookkeeper did not call my attention to that contract having been mailed to the office the time the trade was made. I do not know how it got in the office. He might have brought it there and given it to Mr. Smith. I have Mr. Smith as my bookkeeper. He writes checks and handles detail matters of that kind when I am not there."

The bookkeeper's name was J. W. Smith. In another place Bivins testified:

"Relative to whether or not I ever saw the bill of sale that has been introduced in evidence prior to this litigation, if I did I was just looking—it might have been there in the office, and I may have looked at it. I do not recall it."

He further testified that he was a man of rather extensive business affairs, and owned some three or four ranches; that he had known Mr. Allen since 1908, and had assisted him in making loans on his cattle at various times; that in 1913 he was interested with Mr. Allen in a bunch of cattle which they took to Kansas, and lost some $14,000 or $15,000 on that deal; that he had indorsed Allen's paper in five or six different transactions. He further testified that at the time the loan was made for the Renfro deal with the St. Joseph Cattle Loan Company he was on Allen's paper with the loan company for some $7,200.

Mr. I. A. Vant, president of the loan company, testified by deposition that when he made the loan of this money to R. L. Allen he used the proceeds to take up a previous loan of R. L. Allen with the company, upon which paper Bivins was an indorser, and that he sent money to Allen or to Bivins. Bivins testified that the money derived from

the loan "was either sent direct there [probably meaning to the St. Joseph Cattle Loan Company] or was sent to me—to the Amarillo National Bank, at Amarillo, to my account and deposited to my account; that he [Allen] made a deposit in the Amarillo National Bank, showing there was money coming to Allen"; that the first money that was received out of this loan was some $26,000; that Bivins' bookkeeper, acting under his instructions, paid certain checks, signed Bivins & Allen; that he later wrote to Allen that he was not a partner with him in the deal, and requested him not to sign any more checks or papers connected with the deal in the name of Bivins & Allen, and that Allen did not use the name Bivins & Allen any more.

Renfro testified that the consideration mentioned in the bill of sale was $31,155; that he and his brother had given a mortgage on the cattle for $28,000, and that said amount was paid by a draft signed by Allen in the firm name of Bivins & Allen, which draft was mailed direct to Oklahoma City, and that he got the notes back marked paid by Bivins & Allen's draft; that the total consideration paid him and his brother by Bivins & Allen was around $36,000. It was further shown that a number of checks drawn on Bivins by Allen, some for feed and other expenses connected with the management of the ranch, were paid during the fall of 1917 and the spring of 1918.

[1] We are unable to say that the evidence fails to support the finding of the jury that Lee Bivins by his course of conduct was estopped to deny to Renfro Bros. that he was a partner with Allen in the deal. Renfro testified that at the time the deal was made Allen represented to him that Bivins was a partner in the transaction, and that he knew Bivins by reputation, and knew he was a man of financial responsibility, and relied thereon, and would not have made the deal had it not been for such representations. In the case of Harris v. Crary, 67 Tex. 583, 3 S. W. 316, the Supreme Court, speaking through Justice Gaines, briefly discussed the questions: First, of a secret partnership; and, second, of an ostensible partnership, and says:

"The former exists where one is really participating in the profits and loss of an enterprise carried on by another, and withholds a knowledge of the fact from the public; the latter takes place when one who has no actual interest in a business says he is a partner with another, or knowingly permits such other in any manner to use his name as a member of the firm in order to obtain credit."

30 Cyc. p. 390, § 4, reads as follows:

"When persons hold themselves out as partners, in a particular business, and thereby induce others to deal with them in that capacity, it is no defense to actions brought against them by such others that there is no partnership between them. And one who holds out another as his partner will be liable as such for the acts of the other in the name and on account of the firm, if within the scope of the firm's business, although he was not consulted in the matter. And one who knowingly permits himself to be held out as a partner is also liable to those who deal with the concern, in the belief that the representation is true, as fully as if he were a partner in fact. Negligently permitting one's self to be held out as a partner may operate as an estoppel."

On page 393, subdivision "c," of the same work, it is said:

"In order to render one liable as a partner who is not a partner in fact, it must appear that the alleged act of holding out was done by him or with his assent expressed or implied. But undoubtedly, if a person learns that his name is being used as that of a member of a firm, he is under a duty to prohibit such use, and it is the general rule that when one knows that he is held out as a partner in a particular business he is bound to take such steps as an ordinarily prudent person would take under the circumstances to notify the public that he is not a partner."

[2] In the instant case, both Bivins and Allen testified that no partnership relation existed between them, and that Allen bought the cattle for his personal account, and that Bivins owned no interest in them. But, while Bivins testified that some time after these drafts were drawn in the firm name of Bivins & Allen, and after the contract was made for the purchase of the cattle, he wrote to Allen that he was not a partner in the transaction, and requested him not to use his name any more in connection with the transaction, it is not shown that he notified Renfro Bros. of such fact. It would appear that a reasonably prudent man, knowing that his name was improperly used in a business, would have notified all persons whom he knew or had reason to think were relying on the existence of such partnership. Hence we overrule appellant's first assignment of error, complaining of the court's failure to give a peremptory instruction to find in favor of the defendant Lee Bivins.

[3] We also overrule the second assignment, which is to the effect that the verdict and answer to the special issues and judgment entered thereon is contrary to the law and evidence, because special issues 2 and 3 are not authorized by the pleading. We conclude that the pleading of the defendants Renfro Bros., setting up the facts upon which they relied for an estoppel as against Lee Bivins, together with their adoption of the pleadings of the plaintiff, presenting the same plea, are sufficient to authorize the trial court taken together with the evidence, some of which has been heretofore noted, to submit the issues Nos. 2 and 3, and that the evidence is sufficient to sustain the find-

ings of the jury on these issues. Plaintiff pleaded that Allen represented to Renfro Bros. that he was a member of the firm of Bivins & Allen, and that thereby Renfro Bros. were caused to execute a bill of sale of their live stock to the firm of Bivins & Allen, and to put the same on the records of Stonewall county; that thereafter Allen, in the name of Bivins & Allen, drew a check upon Bivins, which check was duly honored by Bivins, in payment of the purchase of the cattle, live stock, and other personal property on the ranch, and the transfer of the lease by Renfro Bros. to Bivins and Allen; that in addition, Bivins furnished the money with which to buy feed and other expenses necessary and incident to caring for said live stock, and thereby caused innocent and unsuspecting persons to rely upon the fact that he was a partner in the business and that he was now estopped from denying that he was a copartner with Allen in the deal. Hence we overrule the third, fourth, fifth, sixth, seventh, eighth, and ninth assignments.

[4-6] In the tenth assignment, complaint is made of the admission of the testimony of J. E. Renfro that defendant Allen told him that he (Allen) and Bivins were partners, on the ground that said statement was hearsay as to Bivins, and any statement made by Allen as to a partnership between him and Bivins would not be binding upon the latter. Appellant cites Wallis v. Wood (Sup.) 7 S. W. 852, Buzard v. Jolly (Sup.) 6 S. W. 422, 30 Cyc. 409, and 20 R. C. L. 847, to support this assignment. These authorities lay down the rule that declarations of admitted members of a firm that certain other persons were members of the firm are inadmissible to prove them partners, when such declarations were made in their absence and without their authority or consent. The jury having found that Bivins and Allen were not partners, the assignment fails to present material error in so far as the error objected to might tend to establish such partnership. Upon the question of whether or not Bivins permitted himself to be held out to Renfro Bros. as a partner with Allen in this transaction, we think the evidence was admissible. We are of the opinion that such evidence was admissible upon the issue of estoppel pleaded against Bivins. The Renfros were required to prove that such representations of partnership between Allen and Bivins were made by Allen, and that they relied upon them. If they did not further prove that Bivins, with knowledge of such facts as would put a reasonably prudent man upon notice that such representations had been made, then so acted as to estop him from denying the partnership, the evidence of statement made by Allen to Renfro would have become immaterial, hearsay, and inadmissible. But we think Renfro Bros. did prove facts tending to sustain the claim of estoppel. It is often true in a trial that in establishing a certain fact it is necessary to introduce evidence whose admissibility depends upon other evidence subsequently to be introduced. If such later evidence is not forthcoming, the trial court will, upon motion or of his own volition exclude the preliminary evidence. In 20 R. C. L. p. 848, after discussing the rule that the fact of partnership cannot be proved in an action seeking to hold one person liable for goods, sold to another on the ground that such goods were for the use of a partnership, of which the defendant was a member, by evidence of declarations made by the one to whom the goods were sold when the defendant was absent, the author says:

"After the existence of the partnership has been proved by evidence other than such admissions, it seems that they may be admitted in evidence. Thus the representations of a person who has made a sale that he was in partnership in the transaction with another person may be admitted in evidence, after it has been shown that the latter received the purchase money and recognized and ratified the contract of sale."

[7, 8] In the instant case, there was evidence that Allen had signed the name of Bivins & Allen to the contract of sale, and that he had sent a copy thereof to Bivins, and that Bivins did receive it at his office in Amarillo; that subsequently Allen signed checks on the firm of Bivins & Allen, and drew drafts on Bivins in such firm name, which drafts were paid. We conclude, in the light of such evidence, that the admission of the testimony objected to cannot constitute material error, if error at all. Moreover, this assignment is based on defendant's bill of exception No. 1, which the court approved with a statement that the testimony objected to was in response to question propounded to the witness by the defendant's counsel, and with that conclusion we concur.

[9] The eleventh assignment complains of the testimony of W. G. Owsley, district clerk of Stonewall county, to the effect that Miles Bivins, son of defendant (who was sent to Stonewall county in the spring of 1918, in response to a communication from Allen, advising the defendant Bivins that the cattle were dying, and that Bivins had better come down and take charge of the ranch and sell the stock), stated to him that Lee Bivins was part owner and partner in said cattle, and that he, the son, had been sent there by his father to take charge of the ranch. We think this testimony was harmless, at any rate, since the jury found that Bivins and Allen were not partners.

The trial court at the request of the plaintiff filed his conclusions of fact in addition to the findings by the jury in answer to issues submitted.

The twelfth assignment is directed to the

second finding of the court, which was .to the effect that in November, 1917, said lease was transferred and assigned by R. L. Allen, who acted under the firm name of Bivins & Allen, the jury having found that Lee Bivins permitted Allen to hold Bivins out to Renfro Bros. as a partner after Bivins and Allen acquired the lease in question. We think such finding reflects the undisputed facts, and therefore overrule it.

[10] We further overrule the thirteenth assignment, which complains of the fourth finding of fact by the trial court to the effect that the defendant Bivins had actual notice, on or about September 21, 1917, that Allen was signing his name to contracts under the firm name of Bivins & Allen in his tradings with Renfro Bros., and that Bivins paid said $3,000 check so signed and drawn by Allen, and in no wise repudiated the same or gave notice to Renfro Bros. that Allen had no authority to use his (Bivins') name. We think the evidence sustains this finding.

[11] We conclude that the sixteenth assignment of error, directed to the failure of the court to sustain plaintiff's special exception leveled at that part of plaintiff's petition wherein she alleged that she had a preference lien to secure the money due as pasturage under the terms .of the lease contract, is immaterial. While we are disposed to agree with appellant that plaintiff had no such lien under Rev. St. art. 5664, or any other article of the statute to which our attention has been called, yet we conclude that the action of the court in failing to sustain defendant's special exception becomes harmless, inasmuch as that question was not submitted to the jury, nor does it seem to have entered into the judgment rendered.

We will not discuss other assignments contained in appellant's brief, but we have examined the same, and conclude that they should be overruled.

All assignments are overruled, and the judgment is affirmed.