## J. C. RABE v. THE STATE.

### No. 5770. Decided June 16, 1920.

1.—Theft of Cattle—Ownership—Indictment—Verdict.

Where, upon trial of theft of cattle; the indictment charged different ownership in three different counts, and all three counts were submitted in the charge of the court and the jury found the defendant guilty, in a general verdict, and it developed from the evidence that only one of the named owners in one of the counts should have been alleged as owner, as he was at the time in the active care, control and management of the cattle, same was reversible error.

2.—Same—Misconduct of the Jury—Defendant's Failure to Testify.

Where, upon trial of theft of cattle, the jury, in their retirement alluded to and discussed defendant's failure to testify, the same was reversible error. Following Boozer v. State, 198 S. W. Rep., 295, and other cases.

Appeal from the District Court of Angelina. Tried below before the Honorable L. D. Guinn.

Appeal from a conviction of theft of cattle; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Mantooth & Collins* and *J. J. Collins*, for appellant.—On question of defendant's failure to testify: Wilson v. State, 46 S. W. Rep., 251, and cases cited in opinion.

On question of ownership: McKnight v. State, 156 S. W. Rep., 1188; Rabe v. State, 212 S. W. Rep., 502.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is the second appeal. The judgment was reversed on the former appeal because of a variance between the allegations of the indictment and the evidence. The indictment on the former appeal charged ownership in Dr. Stewart, the real owner of 'the alleged stolen cattle. The care, control and management of the cattle was held under the evidence to be in Thomas. This constituted a variance, for which the judgment was reversed. A new indictment was presented containing three counts, alleging respectively ownership in Dr. Stewart, Mr. Herrington and Mr. Thomas. Each count charges separate ownership. The count charging ownership in Herrington finds no basis in the facts. He was not in possession of the cattle, or the pasture from which they were alleged to have been taken. Herrington owned the pasture, but under a contract with Mr. Thomas, Thomas was in control and exercised care, control and management of the pasture. Thomas had been in control under his contract with Herrington for about two

years. Herrington had a conversation with Dr. Stewart with reference to pasturing his cattle, in which he informed him of the fact that Thomas had control of the place and any contract he made with Thomas would be satisfactory. Dr. Stewart called upon Thomas, who agreed to let him pasture his cattle. There seems to have been no stipulated price. Thomas was in control of the property, the pasture and fences. Thomas' testimony upon this trial is in conflict with his testimony upon the former trial. Upon the former trial he stated: "It is true that I testified before in this case: 'that I owned a one-half interest in the pasture on that place this year. Dr. Stewart made arrangements with me this year to pasture some of his cattle in my pasture. He made a rental contract with me to rent my place. As to whether or not he was to pay me for the use of the pasture, we never set no price. He was to pay me a price. I left it to Mr. Herrington to set the price, that is, Mr. Josh Herrington. He did not pay the pasture rent in advance. I look after the place myself when I am able, such as keeping up the fences around the pasture and the closing of gates and things like that, but I have been sick some this year. There were a few cattle belonging to other people besides Dr. Stewart. I saw to the cattle that were in the pasture, that is, I was supposed to keep them in there and to keep other people's out. I saw that the fences were kept up and the gates closed the best I could. I don't know just how far it is, but I think it is something like a mile Mr. Tulley lives from that pasture.' That is correct." The above was his testimony upon the former trial. He further adds here: "What I testified to before was the truth and it is true now." On this trial Thomas testified, referring to Dr. Stewart:

"I believe it was a couple of days that he come to see me before the cattle were put in the pasture; any way, he came to see me just before the cattle were put in there. When he put the stock or when he made arrangements to put the stock in the pasture he did not put the stock in my control, for me to manage and look after. I did not have any authority, management or control whatever over the cattle. I had no instructions at all with reference to the cattle. We had no agreement about the fences as to who was to keep them up, me and Dr. Stewart did that. As to who kept the gate closed and looked after things of that kind, the children did at that time, I wasn't able, I was sick. Dr. Stewart did not mention to me anything about such things as looking after the gate or taking care of the cattle, whatever. If he asked me to exercise any sort of management or control about those cattle I don't remember it. I am the one that reported that some of the cattle were gone."

The evidence shows that Dr. Stewart was not about the pasture, and exercised no management over it or the cattle further than to place them in the pasture controlled by Thomas. This he did through his employed hands. The case was decided before upon the theory

that Thomas had a lien on the property for their pasturage, and that, therefore, he was in possession of the cattle as against the true owner, Stewart. This conclusion was reached by virtue of a lien fixed under such circumstances by the terms of the civil statutes. It was a legal lien, and would be operative in the absence of a contract to the contrary. These parties could have made any contract with reference to it they saw proper to do. The evidence does not so show. In fact, it excludes the idea of such contract. Had the owner, Dr. Stewart, taken the cattle from the pasture with the fraudulent purpose of defeating the lien legally resting upon the cattle, he would have been subject to prosecution under the statute. See P. C., Art. 1335; Branch's Ann. Crim. Stats., p. 1353. There would be no question of law or in fact that Thomas would be entitled to the possession of the cattle after they were placed in his pasture as against Dr. Stewart until the pasturage had been satisfactorily arranged. This would place Thomas in possession of the property under the facts of this case. We are still of opinion that ownership should have been alleged in Thomas and not in Stewart. The statement by Thomas that there was nothing mentioned between him and Stewart that he, Thomas, was to have control and management of the cattle, and kindred testimony, would not legally change this proposition. The law places the obligation upon him to take care of the cattle when he assumed the burden of their pasturage and gave him a lien for pasturage. This matter was presented in various ways by appellant in the trial court. We have stated the matters generally.

Appellant requested the court to require the State to elect upon which count the prosecution would be had at the time the trial began. When the testimony was in he again urged the election under which count the conviction would be asked. These were overruled. The court instructed the jury that they could convict under either count, submitting all three of them to the jury. Exception was properly and timely reserved to this action of the court. General ownership could have been alleged in Dr. Stewart as the real owner, and posssession and management in Thomas. This was pointed out in the former appeal. Not that it was necessary to so allege, but if it was thought proper to allege ownership in the real owner under the facts of this case it should have been alleged in that manner. We are still of opinion that ownership should have been alleged in Thomas. He became the temporary owner of the property as against even the real owner under the circumstances and the evidence depicted in this record. The authorities were sufficiently collated in the opinion on the former appeal.

Misconduct of the jury in discussing the failure of appellant to testify was presented on motion for new trial. Several jurors testified to that effect. Two or three of the jurors testified that if it occurred they did not hear it. Several jurors testified they were for the minimum punishment of two years until this matter was dis-

cussed; that they then changed their view and voted for the maximum of four years, which was the verdict returned by the jury. The details of the testimony we deem unnecessary to mention. There are a great number of authorities cited by appellant in his brief which we think are in point. Wilson v. State, 46 S. W. Rep., 251; Tate v. State, 38 Texas Crim. Rep., 261, 42 S. W. Rep., 595; Mizell v. State, 81 Texas Crim. Rep., 241, 197 S. W. Rep., 300; Boozer v. State, 198 S. W. Rep., 295; Walling v. State, 59 Texas Crim. Rep., 279, 128 S. W. Rep., 624, and for a great number of other cases see Branch's Ann. P. C., p. 292. Some of the jurors gave as a reason for desiring to fix the punishment at two years that appellant was getting to be an elderly man and they thought two years would be a sufficient time for his reformation, and to ascertain the fact that he must not repeat this character of transaction, but after the matter was discussed of his failure to testify they changed their verdict and went to four years. It is sufficient with reference to the remarks used to copy the following from the affidavit of Perry: "After the jury had retired I was in favor of giving him a conviction for only two years as he is now an old man, and there being no proof of other crimes against him I felt that if we gave him a two-year sentence that probably by the time he served that out he would be taught a sufficient lesson to not do a thing like that again. Some of the others also were in favor of a two-year term, but some of the older men spoke up against this and as an argument against giving him a two-year term, said that he ought to have the limit of four years; that he did not even get on the stand and testify or attempt to explain and tell how it happened, and that he did not even get on the stand and offer any excuse for his conduct, or give the jury any information as to why he stole the cattle and that if he had not been guilty he would have certainly got on the stand and denied it." There are affidavits of other jurors substantially to the same effect. The evidence on this issue is in substantial compliance with the above.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*