## SHARP et al. v. JESTER.    (No. 8647.)

(Court of Civil Appeals of Texas. Dallas.
March 25, 1922.)

1. **Landlord and tenant** ⟨⟩246(1)—**Landlord's lien on animals held not to extend to cattle not furnished by landlord.**

Landlord's lien, under Acts 34th Leg. (1915) c. 38 (Vernon's Ann. Civ. St. Supp. 1918, art. 5475), giving lessor a preference lien on "animals, tools, and other property furnished by the landlord to the tenant and to the crop raised on such rented premises," *held* not to extend to lessee's cattle which had not been furnished to him by lessor.

2. **Landlord and tenant** ⟨⟩246(1)—**Lien given owners or lessees on animals for pasturage held not available to lessor as to lessee's cattle.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5664, giving owners or lessees of pastures a lien on animals placed with them for pasturage, did not give lessor of pasturage land a lien on lessee's cattle for amount of rent.

3. **Landlord and tenant** ⟨⟩246(1)—**Lessor held not to have lien on lessee's cattle under statute giving landlord lien on tenant's property within leased buildings.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5490, giving landlord a preference lien upon "all the property of the tenant in such residence storehouse or other building," lessor did not acquire a lien upon lessee's cattle, the lien extending only to property owned by the tenant located within the leased improvements or ordinarily used therein.

4. **Constitutional law** ⟨⟩70(1) — **Required to ascertain and enforce law as created by Legislature.**

The duty of the court is not to make the law by forced construction, but to ascertain and enforce the law as created by the Legislature.

Appeal from Navarro County Court; A. P. Mays, Judge.

Action by George T. Jester against R. M. Sharp and others. Judgment for plaintiff, and defendants appeal. Affirmed in part, and reversed and rendered in part.

W. J. Weaver and J. S. Simkins, both of Corsicana, for appellants.

Jester & George, of Corsicana, for appellee.

VAUGHAN, J. It is only necessary to consider one question in order to dispose of this cause, to wit:

"Did appellee have a landlord's lien on the 15 head of dairy cattle on which such lien was foreclosed by the judgment appealed from as the cattle of appellant W. B. Weaver to secure the payment of $350, for which judgment was rendered against appellants as rents due by said Weaver?"

This suit was founded upon the following written lease contract:

"Rent contract this day entered into by and between Geo. T. Jester, of the first part, and R. M. Sharp of the second part, as follows:

"Geo. T. Jester, of the first part, rents to R. M. Sharp, of the second part, the following property consisting of house, pasture and cattle, for a period of 8 months from May 1st, 1920, to and including the month of December, 1920, for a rental of eight hundred dollars, payable monthly installments of one hundred dollars, payable on the 5th of each month, May rent payable June 5th, and each month the same.

"The property rented consists of the following: The house and improvements occupied by T. H. Walker during the past year, consisting of residence, milk house, garden lot, and use of the wells if needed; others, however, are allowed to use the well in block south of house; also the milk house where cows are milked, and the three blocks for calf pastures. Said pastures to be used only for calf pastures, also all pasturage consisting of about fifty acres. No wood is to be used and only the grass land to be used. The old barn is to be used only by Geo. T. Jester, who will have said barn or the lower floor of barn arranged to care for the registered cattle and dry cattle rented to R. M. Sharp to be housed during cold and bad weather by R. M. Sharp, the loft of said barn to be reserved to Geo. T. Jester. Also said Jester rents to R. M. Sharp all his cattle except Bessie Brooks cow and about four or five large calves to be removed from place, the remainder of the herd consisting of the following: Bull, Kathleen's Noble, No. 147053; Cows: Ressa Johnson, No. 432349; Daizie Tormentor, No. 447640; Bonificia of L. F. No. 353572; Ann of Elm View, No. 352107; Jester's Golden Pearl, No. 416329; Pretty Exile, No. 362563; Susie T. No. 409944; Huldy Denny No. 291443; Sallie Culberson; Francis Cullinan No. 411445; Heifers: Jewel Golden, No. 449670; May Culberson; Ressa's Heifer, and calves. Part of this rental contract is for the pasturge of 16 cows and increase belonging to R. M. Sharp.

"All the young cattle are to be well fed and cared for by R. M. Sharp and at his expense. Said Geo. T. Jester makes no charge for the breeding of R. M. Sharp's cows, but it is distinctly agreed to that no other cows but R. M. Sharp's and Jester's are to be bred to Kathleen's Noble.

"It is expressly agreed that said R. M. Sharp is to take good care of and feed well all of Jester's milk cows and calves. Geo. T. Jester owns a furnace, wash kettle, a bottle washer and milk bottle filler that he loans to R. M. Sharp.

"Said Sharp agrees and binds himself to take good care of all improvements, same as T. H. Walker has during the past year, keeping fences up and in good condition at his own expense. Jester furnishing all material.

"Party of the second part obligates himself at the expiration of this lease to give peaceable possession to said party of all said property of said first part."

Said contract being of date April 28, 1920.

It is only necessary to consider the following allegations in connection with the above

lease contract in order to fully present appellee's case as developed by his pleadings:

That appellant R. M. Sharp, pursuant to the terms of said contract, entered upon and into possession and use of the above-mentioned premises, which are situate on the north limits of the city of Corsicana, Navarro county, Tex., and placed thereon 15 head of cattle described as follows: A light cream colored milk cow about 9 years old, with three tits, called Mattie; a dark red colored milk cow, about 7 years old, called Red; a dark brown colored cow, about 5 years old, called Cor-Tex.; a light red colored milk cow, about 4 years old, called Robbin; a light colored milk cow with a spot on her left shoulder and right flank, about 10 years old, called Pide; a light red colored milk cow, about 4 years, called Willie; a light brown colored milk cow, spotted, and about 7 years old, called Ella; a fawn-colored cow with horns, and about 5 years old, called Beauty; a dark brown colored milk cow with horns, and about 6 years old, called Rosey; a dark brown colored milk cow, about 7 years old, called Alice; a small, light colored milk cow, about 4 years old, called Mollie; a light colored milk cow with dark markings on her face, about 6 or 7 years old, called Kerry; a light colored milk cow with dark markings on her face, and above the hoofs of her fore legs, about 6 or 7 years old, called Julie; a light colored milk cow with dark markings above all hoofs, and about 7 years old, called Otey; a light colored milk cow, about 5 or 6 years old, called Brendy—all of said cattle being the personal property of said Sharp; that the appellant Sharp continued in the use and possession of the above-mentioned premises and in the performance of said contract until on or about the 31st day of July, A. D. 1920, when the said Sharp, without knowledge or consent of the appellee, and without cause, removed his above-described cattle off the said premises of appellee and neglected, failed, and refused to carry out any part of said agreement and contract hereinbefore set out, to the damage of the appellee in the sum of $675; that on or about the 31st day of July, A. D. 1920, the appellant Sharp sold and delivered to appellant W. B. Weaver the above-described cattle, in order that he (Sharp) might defeat the appellee's just claim for rent of the premises as provided for in the agreement and contract of the 28th day of April, 1920, for the months of July, August, September, October, November, and December; that the appellant Weaver, aware of the appellee's lien for the pasturage and buildings rented to appellant Sharp, bought and converted to his own use the above-described cattle, to appellee's damage in the sum of $675.

Appellants did not answer to said suit. In this state of the pleadings judgment was rendered against appellants, jointly and severally, for the sum of $350, with foreclosure of landlord's lien on the 15 head of cattle above described, with proper order of sale directed to be issued. Trial was before the court without a jury, and from the evidence introduced the court found the following facts:

That appellant R. M. Sharp is indebted to appellee in the sum of $350 as rent, and that appellee has a landlord's lien on the following described personal property to secure said rent: (Here follows description of the 15 head of dairy cattle above described.) All of which cattle are now in the possession of the appellant W. B. Weaver. That the appellant W. B. Weaver converted the above-described personal property to his own use and benefit while appellee's lien was in full force and effect, to appellee's damage in the sum of $350.

Appellants by proper motion for new trial sought to have said judgment set aside on the following grounds:

"Because the judgment of the court is wholly without support in the plaintiff's pleadings as filed in said cause on August 20, 1920, and upon which said judgment is sought to be predicated herein.

"Because said pleadings show on their face that they are wholly insufficient upon which to predicate a judgment for the amount sought to be recovered by said pleadings, or for any amount whatsoever.

"Because the judgment of the court is contrary to the evidence of the case and is not supported by the evidence in the case.

"Because said pleadings show on their face that they are wholly insufficient upon which to predicate a judgment for foreclosure of a purported lien upon the property therein described or a foreclosure of any lien."

Which motion was overruled; hence this appeal, presenting by proper assignments of error for revision the overruling of said motion.

If there existed a lien on said cattle in favor of appellee, it was perforce of statutory provisions contained in one of the following articles: 5475 (as amended by Acts 34th Leg. p. 76 [Vernon's Ann. Civ. St. Supp. 1918, art. 5475]), 5490, or 5664, Vernon's Sayles' Texas Civil Statutes 1914.

[1] We deduce from the terms of the lease contract that the property described therein was leased by appellant Sharp for the purpose of conducting a dairy, which, as an occupation, is classified as "dairy farming," and may be regarded as much of an agricultural pursuit as the raising of cotton, corn, or other farm products. The 50 acres of pasture land and 13 head of dairy cattle did not pass as an incident under said lease to appellant Sharp to be used in connection with the residence included in said lease contract, or as being necessary to be used in connection with said residence in order to·

obtain the benefits for which same was rented, or necessary to be used in connection with the premises included in said lease, or that said cattle were necessary to the proper enjoyment and use of said residence or to be used ·in connection with the premises subservient to said residence, and certainly not with anything located in said residence or any of the outhouses included in said lease adjoining the premises subservient to said residence. To the contrary, all of said property passed as one leasehold estate as a farming proposition. Therefore appellee's lien rested upon said article 5475, and did not extend to the 15 head of cattle on which lien was foreclosed, as the lien created by said article only extends to such animals, tools, and other property furnished by the landlord to the tenant and to the crop raised on the rented premises. It was not contended that said cattle were furnished by appellee to appellant Sharp.

[2] Article 5664 only secures to owners or lessees of pastures a lien for the amount of charges against animals placed with them for pasturage. Under the facts of this case such lien did not exist, as said cattle were not placed with appellee for pasturage, the pasture land being leased to appellant Sharp for dairy purposes, which excluded appellee from exercising any control over said land during the term for which same was leased, inconsistent with the rights of appellant Sharp.

This brings us to a consideration of the provisions of article 5490, which creates a lien in favor of all persons leasing or renting any residence, storehouse, or other building upon all the property of the tenant in such residence, storehouse, or other building for the payment of rents due and that may become due.

It is contended by appellee that the lien created by said article 5490 was not limited to property owned by appellant Sharp located in the residence and other buildings which passed under said lease contract to said Sharp, but extended to all property owned by appellant Sharp on the leased premises, whether located in said residence or other buildings, to secure the payment of the rents due and to become due under said contract of lease. In support of appellee's position the following Texas cases are cited: West Furniture Co. v. Cason (Tex. Civ. App.) 218 S. W. 774; York v. Carlisle, 19 Tex. Civ. App. 269, 46 S. W. 257; S. F. Bowser & Co. v. Cain Auto Co. (Tex. Civ. App.) 210 S. W. 554— and the following cases by the Supreme Court of Alabama: Mathers v. Barrow, 202 Ala. 342, 80 South. 424; Stephens v. Adams, 93 Ala. 117, 9 South. 529.

The Alabama decisions are based upon a statute materially different from the Texas statute. The Alabama statute (Code 1907,

239 S.W.—42

§ 4747) construed by above decisions provides:

"The landlord of any storehouse, dwelling house, or other building, shall have a lien on the goods, furniture, and effects belonging to the tenant, and subtenant, for his rent, which shall be superior to all other liens, except those for taxes."

The lien created by said statute is not limited by the terms of same to any particular location of the property owned by the tenant but extends to all goods, furniture, and effects belonging to the tenant. However, the Supreme Court of Alabama in the cases cited limited the operation of said statute to goods, furniture, and effects belonging to the tenant located upon the leased premises, and further limited the extent of the lien to the property upon the premises of the rented building, though not kept within the building, provided such property was used by the tenant in connection with his use of the building so leased.

The Texas statute creates a lien "upon all the property of the tenant in such residence, storehouse or other building."

The Supreme Court of Alabama in the above cases, notwithstanding the broad language, "shall have a lien on the goods, furniture and effects belonging to the tenant," apparently extends the lien to all property owned by the tenant regardless of where located, limits the lien created by said statute to property owned by the tenant on the leased premises.

Applying the principle of construction to the Texas statute announced in the Alabama cases, same are authority for holding that the lien created by the Texas statute is limited to property owned by the tenant located in· the leased residence, storehouse, or other building, not necessarily kept within, but such as is ordinarily used therein.

While the facts in the instant cases are in some respects different from the facts involved in the Texas cases above cited, and perhaps might be distinguished, yet, in view of the broad statements contained in same with reference to the property subject to the lien created by said article 5490, we prefer to accept the views therein expressed as supporting appellee's contention that our position may be thoroughly appreciated.

[3] The words used in said article 5490, to wit, "shall have a preference lien upon all the property of the tenant in such residence, storehouse or other building," is language so clear and certain as not to admit of any doubt as to what was the intention of the Legislature and the meaning thereby to be conveyed. Giving said words their ordinary meaning, it was the purpose and intention of the Legislature to extend the lien created by said statute only to the property owned by the tenant located within the leased improve

ments or ordinarily used therein. In other words, before a lien could attach two conditions must concur: First, ownership of the property by the tenant; second, location within the walls of the leased residence, storehouse, or other building, which will include such property of the tenant on the leased premises as is ordinarily used in such residence, storehouse, or other building. Location alone will not suffice, nor will title alone, to create the lien provided by said article 5490.

We must presume that the Legislature used the words employed in said section for the purpose of conferring a right within the common acceptation of the language used, and that the words "in such residence, storehouse or other building" cannot be given any other meaning than that the property on which such lien will attach must be within the walls of such improvements (not necessarily kept within, but such as is ordinarily used therein), for any other construction read into the law will create a right which can only be placed there by doing absolute violence to the plain terms of the language in which said statute is couched.

It would have been an easy task for the Legislature to have used the expression found in article 5475, and we feel confident that, if it had been the purpose of the Legislature to have so extended the lien as contended for by appellee, same would have been incorporated in said article 5490, to wit:

"Same shall be a preference lien upon the property of the tenant hereinafter indicated upon such premises for any rent that may become due."

This would clearly have extended the lien to all property owned by the tenant located upon the leased premises.

[4] Courts are the agency by which the law is made effective—merely the servants of the law, charged with the duty, not to make a law to their liking by forced construction either to give a remedy not provided for or to withhold one secured, but to ascertain and enforce the law as created by the legislative power of the state. Therefore the duties of and limitations on the powers of the judiciary are as important to be observed by courts as it is that the people should bow to the majesty of the law. Both must concur to secure a harmonious and satisfactory enforcement and observance of the law.

While we deprecate the necessity by which we are impelled to disagree with the application of the law as announced in the cases under discussion in extending the lien to property not by the plain language of the law included therein, but, actuated by the principle contained in the following lines:

"Yet, true to our course,
Tho' our shadows grow dark,
We'll trim our broad sail as before,

And stand by the rudder that governs the bark,
Nor ask how we look from the shore."

—there is no other course for us to pursue.

The Supreme Court in the case of Turner v. Cross, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262, furnished us in this instance with our chart, compass, and rudder:

"It is the duty of a court to give to language used in a statute the meaning with which it was used by the Legislature, if this can be ascertained; and to do this, if the words used be not such as have a peculiar meaning when applied to a given art or trade with reference to which they are used in the statute, the only safe rule is to apply to them their ordinary meaning, for the Legislature must be presumed to have used them in that sense in which they are ordinarily understood; and if so applying them the legislation in which they are found seems to be harsh or not to embrace and give remedies for acts for which remedies ought to be given, the courts for such reasons are not authorized to place on them a forced construction for the purpose of mitigating a seeming hardship imposed by statute, or conferring a right which the Legislature has not thought proper to give. It is the duty of a court to administer the law as it is written, and not to make the law; and however harsh a statute may seem to be, or whatever may seem to be its omissions, courts cannot on such considerations by construction restrain its operation or make it apply to cases to which it does not apply, without assuming functions that pertain solely to the legislative department of the government."

The following authorities have been carefully consulted and are additional authority for the conclusion reached by us: Allen v. Houston Ice & Brewing Co., 44 Tex. Civ. App. 125, 97 S. W. 1063; Farmers' Elevator Co. v. Advance Thresher Co. (Tex. Civ. App.) 189 S. W. 1021; De Benham v. Short et al. (Tex. Civ. App.) 199 S. W. 1147; Hardin v. State, 47 Tex. Cr. R. 493, 84 S. W. 591; Williams v. Magouirk (Tex. Civ. App.) 235 S. W. 640.

We therefore hold, assuming that appellee by proper proof established all the material allegations contained in his petition not inconsistent with the terms of the lease contract upon which appellee's suit was based being made a part of his pleadings and bound thereby, the court erred in rendering judgment against appellant W. B. Weaver for said sum of $350, and in foreclosing landlord's lien on said appellant's cattle described in the judgment. The judgment of the trial court is therefore affirmed in so far as same adjudges appellee a personal judgment for $350 against appellant R. M. Sharp, and is reversed and rendered as to appellant W. B. Weaver that appellee take nothing by his suit as against said W. B. Weaver; that all costs of this appeal be, and are hereby adjudged against said appellee.

Affirmed in part, and reversed and rendered in part.