See, also, Vernon's Tex. Crim. Stat. vol. 1; p. 720; Thompson v. State, 24 Tex. App. 383, 6 S. W. 296; Johnson v. State, 129 Wis. 146, 108 N. W. 55, 5 L. R. A. (N. S.) 809, 9 Ann. Cas. 923; Vinson v. State, 55 Tex. Cr. R. 495, 117 S. W. 846.

The judgment is reversed, and the cause remanded.

---

### HINDES v. LOCK et al. (No. 6874.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 24, 1923.)

Animals ⨪26(2)—Lessor of pasture held to have no lien on cattle.

A lessor of a pasture had no lien on cattle put on the lands by lessee, the lessee being given absolute control, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5664.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Suit by G. F. Hindes against Fred G. Lock and another. From an adverse judgment, plaintiff appeals. Affirmed.

Clamp, Searcy & Groesbeeck, of San Antonio, for appellant.

J. L. Browne and L. H. Browne, both of San Antonio, for appellees.

FLY, C. J. This is a suit by appellant against appellees, Fred G. Lock and the New Orleans Cattle Loan Company, on a written lease of 13,000 acres of land in Frio and Atascosa counties and an 80-acre trap for grazing at the rate of 40 cents an acre and $50 for the trap. It was alleged that payments had been made reducing the amount due to $5,250. It was alleged that, after the execution of the lease contract, Lock placed 700 steers in the pasture, and that at that time there was no lien on the cattle of any character, and appellant claimed a statutory lien on the cattle to secure his lease money. Afterward, the New Orleans Cattle Loan Company obtained mortgage liens on the cattle in appellant's pasture to secure the payment of money loaned Lock by said company. The contest was as to whether appellant had any lien on the cattle by virtue of the statute. The court held that he had no lien and rendered judgment in favor of appellant against Lock for his debt and in favor of the loan company for $31,951.26, and a foreclosure of the mortgage liens on the cattle in the pasture and trap.

The following facts were agreed to:

"On the 28th day of August, A. D. 1920, plaintiff Hindes and defendant Lock entered into a written contract of lease and rental for grazing purposes, of 13,000 acres of land lying in Atascosa and Frio counties, Tex., known as the G. F. Hindes ranch, and also an 80-acre trap at the town of Hindes, a copy of which contract is hereto attached, marked 'Exhibit A,' and made a part and parcel hereof for all purposes; and that said contract has never been filed for record or registration in either Atascosa or Frio counties, Tex., until March 3, 1922, when it was filed in Frio county; and that the said New Orleans Cattle Loan Company had no actual notice or knowledge of the terms of said lease contract until a few days before the filing of this suit.

"After the execution of said written contract, above referred to, and under the terms thereof, defendant Lock on September 19, 1920, went into possession of said lands and has continued in exclusive possession thereof to the present time, and, to wit, on said September 19, 1920, said defendant Lock placed in said pasture about 579 head of four year old and up steers, branded in one or more of the following brands: G̅ T P Γ 2. And, also 12 cow ponies, which

said stock were still in said pasture and said trap at the time of the bringing of this suit.

"That said defendant Lock paid to the plaintiff Hindes the installments of rent of $2,625 each, which became due under said lease contract on September 1, 1920 and March 1, 1921, but has not paid to said Hindes the two installments of rent of $2,625 each, which became due, respectively, on September 1, 1921 and on March 1, 1922.

"On July 13, 1920, defendant Lock was indebted to the defendant New Orleans Cattle Loan Company, in a large amount of money which was secured by valid chattel mortgages, executed by said Lock, in the usual and customary form, hereinafter mentioned, upon said stock so placed in said Hindes pastures, the first of which was dated July 13, 1920, and was filed for registration on the 20th day of July, 1920, in Calcasieu parish, La., where said Lock then and now resides, and was also acknowledged on September 29, 1920, and filed for record and duly registered in Frio county, Tex., on October 2, 1920, and in Atascosa county, Tex., on October 2, 1920; and another chattel mortgage dated March 11, 1921, filed and duly registered on March 14, 1921, in each of said counties of Frio and Atascosa, and by another chattel mortgage dated July 1, 1921, filed and registered on July 11, 1921, in each of said counties of Frio and Atascosa, and by another chattel mortgage dated January 3, 1922, filed and registered on January 9, 1922, in each of said counties of Frio and Atascosa, all of said chattel mortgages covering said stock hereinbefore described and securing the payment of said indebtedness and the latter ones each being a renewal of the one immediately preceding and there now being due and owing by said defendant Lock to said defendant New Orleans Cattle Loan Company on said indebtedness, secured by said mortgages, the amount, principal, interest and attorney's fees, represented by the three renewal notes, copies of which are hereto attached and marked, 'Exhibits "B," "C," and "D,"' two of which notes are in the principal sum of $10,000 each, and the third being in the principal sum of $8,698.75; that the plaintiff Hindes had no notice or knowledge of said chattel mortgages, except that given by the filing and registration of said several mortgages in Frio and Atascosa counties."

It was agreed that the only issue of law involved in the cause is:

"Has the plaintiff, George F. Hindes, a statutory pasturage lien on the said cattle placed in said pasture by the defendant Fred G. Lock to secure the payment of the money owing by the defendant Fred G. Lock to said George F. Hindes under said contract, and, if so, is said lien superior to the chattel mortgage liens held by the defendant New Orleans Cattle Loan Company?"

Under the agreed statement of facts, appellant having no notice of the execution of the chattel mortgages at the time the chattel mortgages were executed and the cattle placed in the pasture, if the statute gave a lien on the cattle for the amount due on the lease, that lien was necessarily superior to the chattel lien taken by the loan company on the cattle.

It is the contention of the loan company that, as appellant leased his pasture to Lock for a term of years and gave him possession and control of the same and did not reserve a lien in writing on the cattle, he has no lien statutory or otherwise on the cattle, and that, as the lease money was paid by Lock for 1921, the chattel mortgages took precedence over any claim for 1922, which did not mature until September 1st of that year, and that if appellant had any lien on the cattle under article 5664, Vernon's Sayles' Civil Statutes, said lien was inferior and subordinate to the mortgage liens. The contention is that if the owner receives cattle for pasturage, and cares for them, preventing their escape, supplying them with water, and performs the duties of an agistor, then he would have a lien on the cattle; but, if he rents a pasture to another for pasturage purposes, he has no statutory lien on the cattle placed in the pasture.

Article 5664 provides:

"Proprietors of livery or public stables shall have a special lien on all animals placed with them for feed, care and attention, as also upon such carriages, buggies or other vehicles as may have been placed in their care, for the amount of the charges against the same; and this article shall apply to and include owners or lessees of pastures, who shall have a similar lien on all animals placed with them for pasturage."

The above statute as originally passed gave liens to proprietors of livery or public stables in the same language as the present statute. It was passed in May, 1874, but under an act of 1895 the article was extended by adding the words:

"And this article shall apply to and include owners or lessees of pastures, who shall have a similar lien on all animals placed with them for pasturage."

A similar lien to that given the proprietor of a livery stable would be on animals placed with them for feed, care, and attention, and for the amount of the charges. It carries with it the idea that the pasture owner or lessee must have the possession and control of the pasture, and that such owner or lessee has received animals for pasturage and has assumed the responsibility of the feeding, care, and attention of the animals. If the owner of a livery stable building should rent his building to another for livery stable purposes and place him in possession and control of it, the lien under the terms of the statute could not possibly arise in favor of the owner because the animals placed in the stable would not receive food, care, or attention from the owner who had parted with its possession and control. After the lease of the property, if any statutory lien should arise, it would be in favor of the lessee and not

the owner. This is the plain construction to be placed upon the statute.

In this case the pasture was leased by appellant to Lock, and he was given absolute control of it. The amount of the rent did not depend upon the number of cattle pastured, that was not considered, but it was rent for acreage independent of whether cattle or other animals were pastured thereon or not. No lien could possibly arise for feed, care, and attention because appellant had not bound himself to give feed, care, and attention. The pasture was rented for grazing purposes, and, of course, it could not be used for farming purposes; but the number, kind, and character of the animals were not prescribed, and appellant assumed no obligations outside of giving Lock peaceful, absolute possession and control of the land. The statute does not contemplate a lien, under such circumstances, in favor of the owner.

Other courts have placed the same construction on the statute as that given by this court, and we have seen no dissent from this. No cases are cited by appellant, but he depends upon his construction of the statute as against the decisions of several Courts of Civil Appeals in this state. Broad v. Cage (Tex. Civ. App.) 220 S. W. 104; Bivens v. Oldham (Tex. Civ. App.) 224 S. W. 240; Sharp v. Jester (Tex. Civ. App.) 239 S. W. 655. The Court of Criminal Appeals puts the same construction on the statute. Rabe v. State, 87 Tex. Cr. R. 497, 222 S. W. 1106. As said in Broad v. Cage, cited:

"There was no lien reserved by the contract; so, if appellees had a lien, it is by virtue of the statute, and it provides for a lien on all animals placed with the owners or lessees of pastures for pasturage. Under the agreement above quoted, instead of these cattle having been placed with any owner or lessee for pasturage, the appellants themselves were the lessees of the pasture and in possession and control thereof as well as in full possession of their cattle; so it seems clear that appellees have no lien under the facts of this case."

Those facts were very similar to the facts in this case.

The judgment is affirmed.