### SACHS v. GOLDBERG.

(Court of Civil Appeals of Texas. Galveston. June 6, 1913. Rehearing Denied June 19, 1913.)

1. TRUSTS (§ 44*)—EVIDENCE—SUFFICIENCY.

In an action to enforce a trust in land purchased by defendant, evidence *held* sufficient to sustain a finding of an oral agreement between plaintiff and defendant that, if either bought the land, it was to be for the benefit of both.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

2. TRUSTS (§§ 17, 18*) — CREATION — PAROL TRUST.

An oral agreement between two persons to purchase land jointly created a trust in the land when purchased by one of the parties under the agreement in favor of the other party notwithstanding the statute of frauds.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24; Dec. Dig. §§ 17, 18.*]

3. TRUSTS (§ 35*)—CREATION—VIOLATION OF AGREEMENT.

Where two persons agreed to purchase land jointly, a trust in such land, when subsequently purchased by one of them, arose in favor of the other, although the purchaser had repudiated the agreement and purchased in open and positive defiance thereof, since he could not by repudiating the agreement divest himself of his obligations thereunder.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 45–50; Dec. Dig. § 35.*]

4. TRUSTS (§ 59*)—ORAL AGREEMENT—MUTUAL RESCISSION—ACTS CONSTITUTING.

Where plaintiff and defendant agreed to purchase a lot jointly, but before the purchase defendant unequivocally repudiated the agreement, and plaintiff thereupon told him he could have the lot, this constituted a mutual abandonment and renunciation of the agreement, preventing plaintiff from acquiring any rights under a subsequent purchase by defendant, although plaintiff was mad and did not know what he was saying when he told defendant he could have the lot.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78–81; Dec. Dig. § 59.*]

5. COURTS (§ 121*) — JURISDICTION — AMOUNT INVOLVED.

In trespass to try title to a lot leased by plaintiff and defendant and on which was a building owned by them, the court had jurisdiction of a cross-bill by defendant, claiming to be sole owner of the lot, for one-half of the rent, although the value of the building was not shown and the amount of the rent was below the court's jurisdiction, since the cause set up in the cross-bill arose out of and was connected with the cause asserted by plaintiff, and, the court having jurisdiction of plaintiff's suit, its jurisdiction extended to all matters connected with the subject-matter thereof.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 413–426, 428, 450, 452, 458, 459, 460; Dec. Dig. § 121.*]

Appeal from District Court, Jefferson County; I. W. Lawhon, Special Judge.

Action by B. Sachs against A. Goldberg. Judgment for defendant, and plaintiff appeals. Affirmed.

See, also, 135 S. W. 600.

Joe Williams, of Port Arthur, and Dougherty & Gordon, of Beaumont, for appellant. Geo. C. Greer and Minor & Minor, all of Beaumont, for appellee.

PLEASANTS, C. J. This suit was brought by appellant against the appellee to recover an undivided one-half interest in lot No. 1, block No. 138, in the city of Port Arthur.

In addition to the usual allegations in a suit of trespass to try title, plaintiff's petition alleges, in substance, that on May 14, 1910, plaintiff and defendant became joint owners by purchase of a building situated on the lot before described and are now the joint owners of said building; that soon after the purchase of said building "plaintiff and defendant made and entered into a certain agreement, whereby it was agreed that plaintiff and defendant would negotiate and consummate a purchase of said lot upon which the said house was located from the owner thereof, and that the said purchase when negotiated and consummated by either the plaintiff or the defendant should inure to the benefit of both plaintiff and defendant, and the plaintiff and defendant were to become joint owners of the said lot, each to own an undivided one-half interest therein when the said purchase of the said lot was consummated, and the title to the said lot was to be taken in the name of the plaintiff and the defendant as joint owners thereof"; that on

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

December 9, 1910, defendant purchased said lot from the owner thereof, J. S. White, for the sum of $5,000, paying $500 in cash and the remainder to be paid in nine installments of $500 each, evidenced by vendor's lien notes, and without the knowledge of plaintiff took the title in his own name, in violation of said agreement with plaintiff, and refuses to recognize said agreement and convey to plaintiff, upon payment of his one-half of said purchase money and assumption of one-half of said notes, an undivided one-half of said lot. Plaintiff tendered into court the sum of $250, one-half of the cash payment made by the defendant on said lot, and offered to assume one-half of said purchase-money notes, and prayed "that defendant be forced to accept from plaintiff the said sum of $250 and interest hereinbefore tendered to the defendant, and that it be decreed by this court that upon plaintiff becoming bound for the payment of one-half of said vendor's lien notes the defendant holds in trust for plaintiff the equitable title to an undivided one-half interest in said lot, and that plaintiff recover of and from the defendant both the legal and equitable title to an undivided one-half of the lot hereinbefore described, and all costs of this suit, and for any other and further relief to which he may be entitled in law or equity."

The defendant answered by general demurrer and general denial and plea of not guilty. He further answered by cross-bill against the plaintiff in which it is alleged that, when plaintiff and defendant purchased the building upon said lot, they also purchased from H. A. Gottlich, from whom they purchased said building, a lease held by him on said lot from J. S. White, the owner thereof, which lease was transferred by the written consent of the said White; that said lease was for a term of three years from April 2, 1909, and provided for the payment for the payment as ground rent for said lot of the sum of $150 per year, and to secure the payment of said rent a lien was expressly given in the lease upon said building. "Defendant further alleges that heretofore, on, to wit, December 9, 1910, this defendant purchased from the said owner, J. S. White, who held and owned the fee-simple title to said lot from and under the sovereignty of the soil, and the latter then conveyed to the defendant, A. Goldberg, the fee-simple title to said lot; and defendant has ever since owned and still owns said lot in fee-simple, and is entitled to collect and receive the said ground rent accruing after December 9, 1910, at the rate of $150 per annum, payable quarterly in advance as specified in said lease, during the time when said lease was in force and effect, and have a lien on said building to secure any part thereof, in the event of default. Plaintiff herein, B. Sachs, has hitherto failed and refused to pay to defendant the one-half of said ground rent accruing after December 9, 1910, for which he is justly liable, urging as an excuse or justification for not paying said rents the contention or claim that he is the owner of, or equitably entitled to, one-half interest in said lot, upon the alleged ground that defendant agreed with plaintiff to buy said lot for the joint account or benefit of both parties, so that plaintiff would have half interest therein, or that some agreement to this effect was entered into between the parties hereto. Defendant specially and positively denies that there ever was any such agreement, and especially denies that when he purchased and procured said deed he was under any agreement or understanding with plaintiff to buy any interest in said lot, either for or with him, or to take any conveyance to himself for the benefit or use of said plaintiff, or to acquire any interest in said lot in trust for plaintiff. On the contrary, plaintiff, shortly before said deed to defendant was made, requested of defendant to let plaintiff join defendant in the equal purchase of said lot," which request defendant positively and unequivocally refused; and thereupon plaintiff violently abused and assaulted defendant, and left his presence with the expression, in substance, that 'you (meaning defendant) can have the lot; I don't want it'; and after this altercation and declaration, the deed was forthwith made to defendant alone, there being no agreement whatsoever for a joint purchase. But, on the contrary, defendant alleges that before any title or interest in the land vested in defendant there was an express refusal and renunciation by said defendant of any agreement or understanding for a joint purchase, if any such agreement or understanding had ever existed, and plaintiff likewise renounced and abandoned such agreement, if any there ever was. Defendant, however, especially denies that he ever at any time agreed to a joint purchase of said lot, and alleges that by reason of the facts hereinbefore stated plaintiff did not and could not have relied on defendant to buy a half interest for plaintiff at the time of the transaction. Defendant specially alleges that all that ever passed between plaintiff and defendant was verbal, and defendant here now pleads the statute of frauds in bar of any effort to make any alleged verbal understanding or agreement the basis of a title to said lot or any interest therein. Wherefore, premises considered, defendant prays that plaintiff take nothing by his suit, and that defendant may go hence without day and recover all costs by him in this behalf incurred; that defendant, A. Goldberg, may have judgment against plaintiff, B. Sachs, for title to and possession of said lot, and for one-half of the ground rent due and unpaid on said lot, in accordance with the terms of said lease, and for a foreclosure of defendant's lien upon the half interest of said plaintiff in said leasehold right and building, and for the sale of the same

under the law to satisfy and pay said ground rent due by said plaintiff to said defendant, as hereinbefore set out; and defendant prays for such other and further relief, general and special, in law and in equity, to which he may be entitled."

Appellant by supplemental petition denied all of the averments of appellee's answer, and especially denied that he made the statement abandoning or renouncing his rights under his contract with appellee, as alleged in appellee's answer. He further alleged that the interest of the parties in and to the contract was mutual, and, if he did make the statement or declaration alleged to have been made by him, that said statement simply amounted to a parol waiver or release of his rights under the contract and was without consideration and void. Appellant further alleged that the statements made by him did not amount to a renunciation or abandonment in law, and further that appellee, by his own wrongful acts and conduct, prevented appellant from fulfilling and carrying out his promise and contract, both before and after the execution of the deed to the property by White to Goldberg, and further that there never was a mutual abandonment or renunciation of the contract between the parties, and appellee never understood nor treated any statements made by appellant to him as such. Appellant further alleged that at all times he was actually engaged in good faith in attempting to perform his contract according to the terms thereof, and by his attempted performance of said contract he was emphatically maintaining the terms thereof. He further alleged that any statement or declaration made by him was not intended as a renunciation of his rights under said contract and was never considered as such by appellee; that the statements he did make were made under the stress of anger and excitement caused by an affray between appellant and appellee, were neither treated nor acted upon as an abandonment or renunciation by appellee, and appellant further alleged that he immediately retracted said statement, at all times thereafter offering to fulfill his promise and compel appellee to carry out the terms of said contract, and that no rights inconsistent with appellant's retraction had been acquired by appellee after said retraction, and that appellee carried out his contract with White after the alleged statements by appellant without varying the terms thereof in any particular from those theretofore agreed upon between himself and White, and that the status and legal rights of the parties were not changed in any particular by reason of any declaration alleged to have been made by appellant. Plaintiff further alleged that prior to any difficulty between them, and before any statement had been made by him, Goldberg had paid White the cash consideration for the property.

Upon the trial in the court below the jury were instructed to return a verdict for defendant for the title to the land in controversy and for one-half of the ground rent due on said lease since January 1, 1910. Upon return of this verdict judgment was rendered in favor of defendant against plaintiff for the title to the lot, and for the sum of $108.25 ground rent, with foreclosure of lien on plaintiff's one-half interest in the building.

[1] The evidence is sufficient to sustain a finding that plaintiff and defendant made an oral agreement to purchase the lot jointly, as alleged in plaintiff's petition. Upon this issue plaintiff testified: "Mr. Goldberg and I talked together, not one time, but many times, whenever the time comes to buy the lot, we will buy it together. About seven or eight months before he bought the lot, I told him to write to Mr. White and find out, and in fact he told me that he did write, and Mr. White said if he would sell the property he would never sell it to anybody but us, and he said he got a letter from Mr. White that he was going to be there between the 5th and 10th of December. Mr. Goldberg told me that lot could be purchased for $5,-000. I said it was too much, but we had better purchase it because we owned the building. * * * At the time I had the conversation with Mr. Goldberg, when he stated what Mr. White wanted for the lot, I told him we would buy it because it was worth more to us than anybody else, because we had the building on it, and he said, 'Of course, we will have to take it'; he says just that way. We was just waiting for the time for Mr. White to come to buy it. * * * I can't fix the date exactly of the conversation I had with Mr. Goldberg in which I say we both agreed to purchase this lot for $5,000. It was when we first bought the property, we talked together to buy it together, and it was a half dozen times we talked to buy it when the time come so the property could be sold, because we were under the impression that the property belonged to minors."

It is understood that before the lot was purchased by defendant he denied or repudiated this agreement and refused to let plaintiff have a half interest in the lot. At the time this denial or repudiation of the agreement was made by defendant he had no binding contract with the owner of the lot for its purchase.

Plaintiff testified that on the day defendant purchased the lot he had a conversation with the defendant in the latter's store in which defendant told him that he wanted the lot for himself; that he then went to the office of Mr. Rutan and saw Mr. White and was told by him that he had made a trade with Goldberg but was willing for plaintiff to have a half interest in the lot. Plaintiff then got Mr. Rutan to telephone for Goldberg. As to what occurred after Goldberg came to Rutan's office plaintiff says: "Mr. Goldberg

came in with his check in his hand, and I spoke to him, and I asked him, and he said: 'I want the lot myself. When I get it I will see about it afterwards. I may let you have it.' So, of course, that made me mad and I cursed him. We had a difficulty, and I walked out and told him he could have the lots, just that way; I didn't know what I was saying." On cross-examination he says: "After he refused to let me have a half interest, I jumped on him and hit him. It angered me because he lied to me. He told me Mr. White wasn't in town. After we were talking there, he made me so mad; I didn't think he did right; I just whipped him and told him to go to hell with it. That's what I said when I left. I said, 'Go to hell,' just that way. I just said that I told him he could have the lot. I didn't say I didn't want it."

Plaintiff was at all times ready and willing to pay his half of the purchase money for said lot upon the terms upon which the lot was sold to defendant, and a day or two after the sale to defendant again made tender to defendant of his one-half of the money and demanded the right to a half interest in the property.

It would serve no useful purpose to discuss in detail the various assignments of error presented in appellant's brief.

[2] The first question presented for our determination is whether the oral agreement between plaintiff and defendant to purchase the lot jointly created an express trust in favor of the plaintiff against the title acquired by the defendant to an individed one-half of the lot which can be enforced by the plaintiff notwithstanding the fact that before the purchase by the defendant he had repudiated said agreement. If there had been no denial or repudiation of the agreement prior to the purchase by the defendant, and the property had been bought under the agreement, a trust would have immediately arisen in favor of the plaintiff, and the enforcement of such trust would not contravene the provisions of our statute of frauds. This was the decision in the cases of Gardner v. Randell, 70 Tex. 453, 7 S. W. 781; Allen v. Allen, 101 Tex. 362, 107 S. W. 528; and Lucia v. Adams, 36 Tex. Civ. App. 454, 82 S. W. 335.

[3] Appellee concedes that this is the law, but contends that in order to enforce a parol trust in land the facts must show that the defendant purchased under and in accordance with a prior or contemporaneous agreement to hold the land or some interest therein for the benefit of plaintiff, and that a purchase in open and positive defiance of such agreement does not create a parol trust in the land so purchased. This contention is based on the assumption that, if the agreement to purchase jointly with another is repudiated by the purchaser before he acquires the title, such purchase cannot be said to be in accordance with or under the agreement. To the extent that this assumption involves the proposition that the repudiation or denial of an agreement by one of the parties thereto destroys or terminates the agreement it is manifestly unsound. Unless there was a mutual abandonment or renunciation of the agreement prior to the purchase by one of the parties, the agreement must be regarded as subsisting at the time the purchase was made, and it would seem that the purchaser would not be permitted to say that he did not purchase under the agreement. He could not by a repudiation of the agreement divest himself of his obligations thereunder, and as long as these obligations existed they would give rise to a parol trust in any land purchased by him to which the agreement applied.

[4] We are of opinion, however, that the evidence shows a mutual abandonment and renunciation of the agreement before the defendant purchased the lot. There can be no question of the unequivocal and absolute denial and repudiation of the agreement by the defendant. His positive refusal to recognize the agreement so angered the plaintiff that, according to plaintiff's own testimony, he jumped on defendant and whipped him and told him to go to hell with the lot. Plaintiff also testified that after this difficulty with the defendant he walked out and told defendant he could have the lot. All this occurred before the defendant purchased the lot. We cannot see how there can be any doubt that this was a mutual abandonment of the agreement to purchase the lot jointly. The fact that the defendant was mad when he told plaintiff he could have the lot, and that he now testifies that he did not know what he was saying, does not destroy the effect of his declaration. We think it clear that if defendant, after having purchased the lot, had repented of his repudiation of the agreement and sought to hold plaintiff to said agreement and required him to pay one-half of the purchase money and take a one-half interest in the property, plaintiff could not be held bound by the agreement. If plaintiff was no longer bound by the agreement, the defendant should not be held bound thereby.

The evidence showing the mutual abandonment of the agreement prior to the purchase by the defendant being undisputed, the trial court did not err in instructing the jury to return a verdict in favor of the defendant.

[5] There is no merit in appellant's contention that the trial court was without jurisdiction to hear and determine defendant's plea for the recovery of one-half of the ground rent due on the lot and the foreclosure of the lien, given to secure said rents, on plaintiff's one-half interest in the building on the lot. The ground of this contention is that the value of the building being neither alleged nor proven, and the amount of the

rents claimed being below the jurisdiction of the court, it had no jurisdiction to hear and determine the plea.

The cause of action set up in the plea arose out of and was connected with the cause of action asserted by plaintiff, and, the court having jurisdiction of plaintiff's suit, such jurisdiction extended to all matters connected with the subject-matter of the suit, and it is immaterial that the amount claimed by the defendant in his cross-action was below the jurisdiction of the court. Stacy v. Campbell, 45 S. W. 759; Smith v. Wilson, 18 Tex. 24, 44 S. W. 556.

We are of opinion that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.