### BURT et al. v. CITY OF STAMFORD.
(No. 1297.)

(Court of Civil Appeals of Texas. El Paso. Feb. 16, 1922.)

**1. Set-off and counterclaim ⬢⟲13 — Counterclaim available in action to recover property.**

Rev. St. art. 1330, allowing pleading in set-off, any counterclaim founded on a cause of action arising out of, or incident to, or connected with plaintiff's cause of action is available, though the action is not on a money demand, but for recovery of property.

**2. Set-off and counterclaim ⬢⟲29(1)—Counterclaim held founded on cause of action connected with plaintiff's cause of action.**

Defendants' counterclaim for money paid to plaintiff under the contracts under which the bond for which plaintiff sues was placed in defendants' possession *held* founded on a cause of action sufficiently incident to or connected with plaintiff's cause of action to be available under Rev. St. art. 1330.

Appeal from District Court, Jones County; W. R. Chapman, Judge.

Action by the City of Stamford against H. C. Burt and others. From judgment dismissing a counterclaim, the named defendant and another appeal. Reversed and remanded.

A. B. Wilson, of Houston, for appellants.
Chas. E. Coombes, of Abilene, for appellee.

HIGGINS, J. The city of Stamford brought this suit against the First National Bank of Stamford, H. C. Burt, and E. D. Stebbins to recover a certain bond of the denomination of $875, being one of a series of bonds known as "city of Stamford sanitary sewerage bonds," alleging that the bond had never been negotiated and belonged to the plaintiff; that Burt and Stebbins were setting up some fraudulent and fictitious claim thereto and causing the said bank to withhold the same from plaintiff. A writ of sequestration was issued upon the filing of the suit and the bond seized. The bank disclaimed any interest in or title to the bond and set up that it came into the possession thereof in the regular course of business attached to a draft drawn by Burt and Stebbins on the plaintiff for the sum of $500, which draft plaintiff declined to pay. Burt and Stebbins answered, denying that they claimed any right, title, claim, or interest in the bond, but that the bond had been sent to them for inspection, and by way of cross-action averred that on June 14, 1919, they and the city of Stamford entered into two written contracts substantially as follows:

One of the contracts provides for the purchase by Burt & Co. of certain sewerage bonds of the city of Stamford at par and accrued interest, less $1,225 as commission, attorney's fees, and expenses, the city agreeing to furnish Burt & Co. with a transcript of the record of the bonds, the opinion of the Attorney General approving the bonds, and waiver of the board of education, and the contract further provided:

"As a faith deposit, H. C. Burt & Co. has deposited with this agreement their certified check for the sum of $500, which check shall

---

⬢⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

be returned to them immediately, in the event their bond attorney cannot approve the bonds."

The other contract related to certain street improvement bonds of the city of Stamford and provides for their purchase by Burt & Co. at par and accrued interest, less $700 as commission, attorney's fees, and expenses. In all other respects this contract is the same in its terms as the one first described.

It was averred in the cross-action that the city of Stamford under its charter had no authority to sell the bonds at less than their par value, and said defendants were advised by their attorney that the contract was not a binding obligation on either plaintiff or the defendants, and that the mayor of the city, who made the contracts in behalf of the city, had no authority to so obligate the city, and that the city and the mayor, under the laws of Texas and the city's charter, had no authority to pay to the defendants any part of the proceeds of said bonds. It was further set up that said defendants had deposited the sum of $500 on each of the contracts as therein stipulated, and, the defendants' attorney not approving the bonds and the contracts for the purchase thereof, said defendants had demanded the return of the $1,000 so deposited, which plaintiff had refused to do, and judgment was sought against the city for the said sum of $1,000.

The plaintiff filed special exceptions to the cross-action, which were sustained by the court, and the cross-action dismissed. Upon trial judgment in favor of the city for the title and possession of the bond was rendered.

Burt and Stebbins appeal, assigning as error the action of the court in sustaining the exceptions and dismissing their cross-action.

[1] In support of the action of the court it is asserted by the appellee that in an action to recover property the defendant will not be allowed to set up a counterclaim upon a money demand which in no way tends to defeat or diminish the plaintiff's right of recovery, citing in support of this position authorities from other states.

It is useless to review the decisions of other states supporting this position, for in Texas, under our statutes, the rule is definitely settled to the contrary by the case of Scalf v. Tompkins, 61 Tex. 476, provided the counterclaim is founded on a cause of action arising out of, or incident to, or connected with, the plaintiff's cause of action as provided in article 1330, R. S., formerly article 650. In the case cited Tompkins sued Scalf to recover certain personal property and procured the issuance of a writ of sequestration. The petition set up that Tompkins sold the property to Scalf, taking certain notes in part payment therefor secured by mortgage upon the property with power of sale; that, Scalf having defaulted in the payment of the notes, the mortgage was foreclosed, and Tompkins became the purchaser at the sale. Scalf set

up three pleas in reconvention. The first two alleged fraudulent representations respecting the property at the time the same was sold to him by Tompkins and sought damages on account of such fraud. The other item related to alleged damages for the alleged wrongful issuance of the writ of sequestration. Exceptions were sustained to the cross-action of Scalf, and he appealed. In passing upon the question the court says:

"From the briefs of counsel it seems that the court held that a plea in reconvention was not permissible except when the plaintiff's claim was a moneyed demand."

After reviewing the former statutes upon the subject and decisions construing the same, Judge Willie says further:

"It is clear from these decisions (our present statutes being substantially the same as the acts under which they were made) that the plea in reconvention is not confined to cases where the original suit was on a moneyed demand, but may be interposed in any case where the matter pleaded comes within the description given in article 650 of the Revised Statutes.

"To hold otherwise would frequently, as in this case, make the right to set up a counterclaim depend on the form and not the cause of action; the prayer for relief, and not the facts upon which the relief is claimed. Here the plaintiff might have sued for the value of the machinery, or prayed a recovery of the machinery and damages for its detention, or in the alternative for the property or its value. In either of these cases his claim might be termed a moneyed demand, to which a plea in reconvention would be appropriate. We do not think that he can, by any different pleadings on his part, deprive his adversary of a defense to which he is clearly entitled, against the cause of action that forms the basis of such pleadings.

"The first plea of the defendant, we think, comes fully up to the requirements of the statute. The plaintiff's cause of action grew out of the fact that he had sold the machinery to defendant partly on a credit, taking a mortgage with power of sale to secure the deferred payments, and that in default of those payments the machinery had been sold under the mortgage, the plaintiff becoming the purchaser. The defense arose out of a broken warranty in the original sale and fraud on the part of the vendor in misrepresenting the machinery sold. Had there been no sale by plaintiff to defendant, his cause of action would never have existed, and the defense arose from the circumstances under which that sale was made, and was therefore incident to, and closely connected with, the cause of action."

In view of this decision, it seems clear that the contention of the appellee is not the rule of decision in Texas. See, also, Stacy v. Campbell (Tex. Civ. App.) 45 S. W. 759; Paschal v. Hudson (Tex. Civ. App.) 169 S. W. 911; Sachs v. Goldberg (Tex. Civ. App.) 159 S. W. 92.

[2] It is further insisted by the city that the plea in reconvention was not founded on

a cause of action arising out of, or incident to, or connected with the plaintiff's cause of action within the purview of article 1330, Revised Statutes, but we think it is. The bond for which the plaintiff sues was placed in the possession of Burt and Stebbins under the contracts pleaded in the defendants' cross-action. The money paid by said defendants to the plaintiff, which the cross-action seeks to recover, was paid to the plaintiff under the same contracts. The cause of action of the plaintiff and the plea in reconvention of the defendants thus primarily originated in those contracts and what was done under them, and, in our opinion, the defendants' counterclaim is founded on a cause of action sufficiently incident to, or connected with, the plaintiff's cause of action to sustain the plea. Article 1330, Revised Statutes, and cases above cited.

For the error of the court in sustaining the exceptions and dismissing the cross-action, the judgment is reversed, and cause remanded.