REESE et al. v. CAREY BROS. et al. *
(No. 2675.)

(Court of Civil Appeals of Texas. Amarillo. May 12, 1926. Rehearing Denied June 30, 1926.)

1. Mines and minerals ⬤⇒100—Allegations of plaintiffs and interveners, in suit for dissolution of partnership engaged in developing oil lease, for accounting and for contribution, and allegations of cross-action, held to authorize adjudication of rights of plaintiffs, defendants, interveners and hence of all parties.

Plaintiffs' allegations that partnership was organized for and engaged in acquiring and developing lease for oil, and that imperative necessity existed for dissolution, accounting, and contribution, allegations of intervening plaintiffs as to amounts due them from partnership, and cross-action by one member against another, *held* to authorize determination of controversy between plaintiffs, defendants, and interveners and hence adjudication of rights of all parties.

2. Evidence ⬤⇒129(6).

On issue as to terms of oral agreement, evidence of terms of other transactions between parties or between one party and third persons are inadmissible, unless parties contracted with reference to them.

3. Mines and minerals ⬤⇒99(2)—In mining partnership contribution suit, testimony that partner agreed to assume debts on purchase of another's interest subsequently purchased by defendant held admissible, where there was conflict as to whether defendant took over contract and assumed debts.

In mining partnership contribution suit, testimony that partner, not party to suit, agreed to assume proportion of debts on purchase of another's interest *held* admissible, where there was conflict as to whether defendant subsequently purchasing such interest took over contract and assumed proportion of debts, since it was admissible if defendant took over contract and assumed debts, and hence exclusion would invade province of jury.

**4. Trial ⬯139(1), 140(1).**

Credibility of witnesses and weight of their testimony is within exclusive province of jury.

**5. Trial ⬯255(4).**

Admission of testimony competent for certain purposes, over objection, is not reversible error, in absence of request to limit testimony to purpose for which it was admitted.

**6. Trial ⬯255(4).**

If testimony should be considered only if jury finds certain facts to be true, party desiring its consideration only in such event should request proper charge.

**7. Mines and minerals ⬯99(2).**

Liability for contribution as to outstanding debts at time of purchase of interest in mining partnership *held* to depend on whether purchaser, in contract with former owner of interest, agreed to assume proportion of debts.

**8. Evidence ⬯488.**

Belief of qualified witness as to value of lease *held* admissible as his opinion.

**9. Mines and minerals ⬯99(2)—In contribution suit between partners developing oil lease, where appellants alleged that they were induced to purchase their interests by fraud and that lease was worthless, evidence of value of lease at that time held admissible.**

In suit for contribution between partners developing oil lease, where appellants alleged that they were induced to purchase their interests by fraud, and that property was then practically worthless, *held* evidence of market value of lease at time of purchases was admissible.

**10. Equity ⬯72(1)—Person may not withhold claim, awaiting outcome of enterprise, and, after decided turn in his favor, assert his interest, and, if property is of fluctuating character, he must press claim at earliest possible time, especially in case of mining property.**

Person may not withhold claim, awaiting outcome of enterprise, and, after decided turn in his favor, assert his interest, especially if he avoided risks of enterprise; and, if property is of fluctuating character, he must press his claim at the earliest possible time, especially in case of mining property.

**11. Appeal and error ⬯930(3)—Trial court presumed to have made findings warranted by evidence, when no special issue requested or submitted.**

In partnership contribution suit, where evidence would support finding that appellants became partners and that indebtedness incurred thereafter was for usual, customary, and proper expenses, but no special issue with respect thereto was requested or submitted, trial court will be presumed to have so found in favor of judgment.

**12. Mines and minerals ⬯99(2)—In mining partnership contribution suit, evidence held to sustain findings that purchasers of interests knew obligations were being incurred and did not repudiate contracts for fraud within reasonable time.**

In mining partnership contribution suit, where certain defendants claimed they were induced to purchase interests by fraud, evidence *held* to sustain findings that they knew and by reasonable diligence might have discovered that obligations were being incurred, and that they did not repudiate their contracts within reasonable time.

**13. Trial ⬯350(3).**

Refusal to submit issue on cross-action for fraud in sale of partnership interest was immaterial, where plaintiff in cross-action permitted business to be operated and expenses incurred, and thereby ratified contract.

**14. Trial ⬯350(3).**

Requested issue whether partnership suffered loss after certain defendants purchased partnership interests *held* immaterial in contribution suit between members of mining partnership, where defendants requesting issue assumed proportional part of outstanding indebtedness on purchase and were partners from that date.

**15. Trial ⬯351(5).**

Refusing special issues sufficiently covered in issues submitted by court *held* not error.

**16. Appeal and error ⬯216(1).**

Defendants cannot complain of rendition of judgment for interveners, on ground that claims were barred by limitations, where they requested, or did not object to, instructions that claims became due on certain date within two years before filing of intervening petitions.

**17. Partnership ⬯75.**

In absence of agreement, interest is not allowed on partners' contributions to capital, but, if moneys paid or advanced are, in effect, loans, interest is allowed, though there is no express agreement therefor.

**18. Appeal and error ⬯843(3)—In mining partnership contribution suit, sufficiency of evidence to support findings on issue of fraud on appellants in their purchase of interests will not be considered, where appellants, after discovering fraud, permitted business to be operated for joint benefit of all.**

In mining partnership contribution suit, sufficiency of evidence to support findings on issue of fraud in sale of interests to certain defendants are immaterial and will not be considered, where they failed to repudiate contracts and by acquiescence permitted business to be operated for joint benefit of all.

**19. Mines and minerals ⬯99(2).**

One purchasing mining partner's interest, though not assuming outstanding indebtedness, acquired interest in partnership property subject to payment of outstanding indebtedness.

**20. Trial ⬯388(2).**

In trial with jury, court need not file findings of fact and conclusions of law.

**21. Trial ⬯395(5).**

In trial before the court, findings should not include evidence considered to establish facts on which findings are based.

**22. Appeal and error ⬯877(4).**

In partnership contribution suit, appellants cannot complain of allowance of fee as attorney

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to one partner, where it was not charged to appellants but to appellees.

**23. Judgment ⬅⟹20.**

In suit for dissolution of mining partnership and for contribution, judgment *held* sufficiently certain and definite.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by Carey Bros., Guy Rogers, and others against T. T. T. Reese and others, in which J. E. Trigg and others intervened and J. J. Moran brought cross-action against J. E. Trigg. From the judgment, T. T. T. Reese and others appeal. Affirmed.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellants Reese, Patterson, Bolding, and Stokes.

Martin, Oneal & Allred, of Wichita Falls, for appellant Moran.

Guy Rogers, Arch Dawson, and Kay, Akin & Smedley, all of Wichita Falls, for appellees.

JACKSON, J. This suit was instituted in the district court of Wichita county, Tex., by E. S. Carey, O. W. Carey, J. E. Childers, W. T. Willis, and Guy Rogers, plaintiffs, against T. T. T. Reese, H. B. Patterson, W. P. Bolding, J. B. Stokes, J. J. Moran, and E. H. Breedlove, defendants.

The plaintiffs alleged:

That on or about May 1, 1919, they, together with E. H. Breedlove, J. E. Trigg, M. J. Michaelias, and H. D. Lewis, associated themselves together under the firm name and style of Carey Bros. Oil Company for the purpose of purchasing an oil and gas lease on the southeast 5 acres of block 88, Red River valley lands in Wichita county, Tex., to be drilled, mined, operated, and developed for their mutual profit and individual gain, and agreed that each should contribute one-tenth of the purchase price and share in proportion to his interest in all losses and profits.

That said tract of land was purchased and developed, oil found in paying quantities, and produced and saved therefrom. That the business was conducted as a mining partnership, and many items of indebtedness incurred.

That on or about November 19, 1919, J. E. Trigg, M. J. Michaelias, and H. D. Lewis, each separately, sold his respective interest to E. H. Breedlove, and, as a part of the consideration for each interest so sold, E. H. Breedlove assumed and agreed to pay the proportion of the outstanding indebtedness of the company chargeable to each interest he purchased. That on said date, or very shortly thereafter, E. H. Breedlove sold to J. J. Moran the interest he had purchased from J. E. Trigg, and, as a part of the consideration therefor, J. J. Moran assumed and promised to pay one-tenth of all the then outstanding indebtedness chargeable to Carey Bros. Oil Company. That E. H. Breedlove sold to T. T. T. Reese and H. B. Patterson the one-tenth interest he had purchased from M. J. Michaelias, and, as a part of the consideration therefor, they assumed and promised to pay one-tenth of the then outstanding indebtedness chargeable to the Carey Bros. Oil Company. That E. H. Breedlove sold to W. P. Bolding the interest he purchased from H. D. Lewis, and, as a part of the consideration therefor, Bolding assumed and agreed to pay one-tenth of the then outstanding indebtedness chargeable to the Carey Bros. Oil Company. That J. B. Stokes purchased from J. J. Moran one-half of his one-tenth interest in the company.

That on and after the purchase by the defendants of their respective interests as aforesaid in the property, the Carey Bros. Oil Company continued to be, as theretofore, a going concern, and that the defendants who purchased from Breedlove bought with full knowledge of the organization, and have continued in said partnership expecting to receive their proportional share of the gains, if profits were made, and expecting to bear their proportional share of the losses, if any. That, since the defendants who purchased their interests from E. H. Breedlove, on or about November 19, 1919, became partners, certain debts have been created and incurred in operating and developing the property, for which the plaintiffs and defendants are jointly liable, the exact amount of which debts can only be ascertained by an accounting. That the liabilities of the partnership greatly exceed the assets, and the debts are due and must be paid; hence it is necessary to dissolve the partnership, have an accounting, and a general contribution among the partners, for all of which plaintiffs pray, as well as for general and equitable relief, both in law and in equity.

J. E. Trigg, H. D. Lewis, and M. J. Michaelias, by permission of the court, intervened as plaintiffs, alleging that they were at one time members of the copartnership, and that they had done certain drilling and performed certain labors for the company, upon which was due them a balance of $6,827.61; that the greater part of this indebtedness was created after interveners had retired from the copartnership; prayed for an accounting, and judgment for such amount as might be due them.

Guy Rogers, individually, sued for the sum of $2,500, evidenced by a note of the partnership, and acquired by him for a valuable consideration, and asked for credit therefor on his contribution.

The Petrolia Supply Company intervened, asking judgment for the sum of $298.37; and the Republic Supply Company intervened, asking for judgment for $130.36.

The defendants Reese, Patterson, Bolding, and Stokes, answered by general demurrer,

special exceptions, and denied generally the allegations of plaintiffs and of the interveners, denied partnership under oath, denied the assumption of the payment of any indebtedness outstanding against Carey Bros. Oil Company at the time of the purchase of their respective interests for which they each paid at the rate of $15,000, and pleaded that they were induced to purchase by the false and fraudulent representations of E. H. Breedlove, who represented to them that the Carey Bros. Oil Company had sold the property to the Seaboard Oil & Gas Company for a consideration of $300,000; that the company owed only $30,000 in addition to a few bills for current expenses, and had enough money in the bank to discharge them; that there were three completed wells on the property, and the derrick erected for a fourth; that the property had cost $180,000, and that the lease was producing more than 1,000 barrels of oil per day, and that the property and equipment above the ground had cost $100,000; that each owner of a one-tenth interest in the lease had invested $15,000—all of which representations were false, and made for the purpose of inducing them to buy, and upon which representations they did rely in making the purchase of their respective interests, and that the interests when purchased were worthless.

J. J. Moran answered by general demurrer, special exceptions, general denial, verified denial of partnership, and alleged that he was induced to purchase his interest by the false and fraudulent statements of E. H. Breedlove, for the sum of $14,000, who represented to him that there were two wells on the lease, both in good condition, with a production at that time of 1,000 barrels per day, and that there was no indebtedness against the lease, all of which statements and representations were false, which he believed and relied upon, and but for which he would not have purchased, that plaintiff J. E. Trigg was a party to the fraud perpetrated on him, and asked recovery on his cross-action against Trigg for the $14,000 as the lease, as Trigg knew, was practically worthless.

Plaintiffs, in reply, by supplemental petition, pleaded that the defendants had waived the fraud, ratified the contract, affirmed their purchase, acquiesced in the partnership relations, and were in all things estopped to set up any matter of fraud as a defense to their liability and their subsequent participation as partners.

The pleadings are very voluminous, but the above statement we consider sufficient for a consideration of the questions involved.

Pursuant to an order of the court, the books and records of the Carey Bros. Oil Company were audited for the period beginning June 23, 1919, and ending May 31, 1922, and a properly verified report of the auditor introduced in evidence. Many general exceptions to this report were filed by the defendants, but no evidence offered to impeach or controvert any of the items constituting the assets or liabilities, profits, or losses, of said company.

The court submitted to the jury, in his main charge, twenty-one special issues, many of which contained numerous subdivisions, three special issues requested by the interveners, and five special issues requested by plaintiffs, all of which were determined against the defendants.

We will not set out all of said findings, but consider those only upon which error is predicated.

The court, in his judgment, decrees that the Carey Bros. Oil Company was a partnership; that the company incurred, prior to November 19, 1919, an indebtedness of $39,119.11, which amount was due and unpaid on said date; that the partnership after said date incurred additional indebtedness in the sum of $23,134.27, and allows the money paid into and for the account of the company to be credited on contributions to the indebtedness, as follows: E. S. Carey, $2,918.20; R. R. Carey, $6,338.57; C. W. Carey, $5,862.40; J. E. Childers, $3,047.01; H. D. Lewis, $3,246.33; M. J. Michaelias, $3,246.33; Guy Rogers, $7,172.17; W. T. Willis, $4,841.60—and that the amounts credited to R. R. Carey and H. D. Lewis should be each increased in the sum of $3,466.03 by reason of their plea in intervention for labor done and material furnished to the partnership.

E. H. Breedlove was beyond the jurisdiction of the court, and no service was or could be had on him. He made no appearance, and judgment was rendered that the one-tenth interest originally acquired and held by him would "not figure in the contributions between the partners." The liability of each of the plaintiffs and of each of the defendants was therefore fixed in proportion to his respective interest on a basis of nine, instead of ten, partners, and judgment rendered against each of the defendants Reese, Patterson, Bolding, and J. J. Moran, that he pay on such basis his proportional part of $62,252.38, the aggregate of the debts of Carey Bros. Oil Company incurred before and after November 19, 1919, and still unpaid, and that J. B. Stokes pay his proportional part of the $23,134.27, the indebtedness incurred after November 19, 1919.

From this judgment, Moran, Reese, Bolding, Stokes, and Patterson, the appellants here, have prosecuted this appeal.

Appellant J. J. Moran presents separate and independent assignments of error, and the other appellants present their assignments in a joint brief.

[1] The first assignment which we shall consider, attacks the jurisdiction of the court to hear and determine the case, first, because of the insufficiency of appellees' pleadings to show that the district court had jurisdiction, and, second, because the court

had no jurisdiction to render judgment in favor of the intervener the Petrolia Supply Company for its claim for $289.37, and no jurisdiction to enter judgment for the intervener the Republic Supply Company on its claim for $130.36.

The appellees alleged that the Carey Bros. Oil Company was a partnership organized for the purpose of acquiring a leasehold estate and the development thereof for oil, and engaged in such enterprise; that an imperative necessity existed for the dissolution of the partnership, and an accounting and contribution be required and made among the members thereof.

J. E. Trigg, H. D. Lewis, and M. J. Michaelias, as intervening plaintiffs, sought a recovery of $6,827.61. Guy Rogers, individually, sought a recovery for the sum of $2,500, and appellant J. J. Moran, in his cross-action, sought judgment against appellee J. E. Trigg for the sum of $14,000. Under these allegations, the court was authorized to hear and determine the controversy between appellants, appellees and the interveners, and having acquired jurisdiction for that purpose, was authorized to adjudicate the rights of all the parties to the litigation. Phelps & Bigelow Windmill Co. v. Parker et ux. (Tex. Civ. App.) 30 S. W. 365; Robinson et al. v. Chamberlain et al., 29 Tex. Civ. App. 170, 68 S. W. 209; Joyce v. Hagelstein et al. (Tex. Civ. App.) 163 S. W. 357; Blair v. Blanton, 93 Tex. 350, 55 S. W. 321; Sachs v. Goldberg (Tex. Civ. App.) 159 S. W. 92.

[2-6] Appellant Moran challenges as error the action of the trial court in admitting, over his objection, the deposition testimony of E. H. Breedlove, and the evidence of J. E. Jenkins while he was on the stand, to the effect that, in the sale by Jenkins of his one-tenth interest in the property, Breedlove assumed the payment of the outstanding indebtedness against Carey Bros. Oil Company, chargeable to such interest, because such testimony was, as to him, immaterial, irrelevant, hearsay, and had no bearing upon the trade between Moran and Breedlove.

The plaintiffs below, appellees here, alleged that E. H. Breedlove assumed in the purchase from J. E. Jenkins, and J. J. Moran had in the purchase of said one-tenth interest from Breedlove, assumed the payment of the indebtedness then outstanding against the Carey Bros. Oil Company, which was chargeable to such interest. This was denied by Moran in his answer.

The court submitted to the jury the issue as to whether appellant Moran, as a part of the consideration for the interest he purchased from Breedlove, assumed one-tenth of the then outstanding obligations of the Carey Bros. Oil Company, which the jury answered in the affirmative.

The witness Breedlove testified that he sold the interest he bought from J. E. Trigg to J. J. Moran, who he told at the time from whom he had purchased said interest, and informed him that he had assumed the outstanding indebtedness against the interest, and that Moran agreed to take his contract and assume the same proportion of the indebtness of the Carey Bros. Oil Company that Breedlove had assumed when he bought it from J. E. Trigg.

Mr. Moran testified that when he bought this interest from Breedlove he made no agreement to assume any debt whatever of the Carey Bros. Oil Company or anybody else; that Breedlove told him there was no indebtedness.

"On an issue as to the terms of an oral agreement, it is not proper to receive evidence of the terms of other transactions between the parties; nor is evidence of the terms of other transactions between one of the parties and third persons admissible on such an issue. But where the evidence shows that the parties contracted with reference to the terms of previous contracts, it is competent to show the terms of such previous contracts in order to arrive at the intention of the parties, and to ascertain all the terms of the contract in controversy." Encyclopedia of Evidence, vol. 3, p. 524.

If the testimony of the witness Breedlove is true that appellant took over his contract for the purchase of the interest from Jenkins and agreed to assume the outstanding indebtedness, the testimony objected to was admissible. If the testimony of appellant Moran was true, that he did not take over the contract and did not assume the indebtedness, such testimony should have been excluded.

This case was tried before a jury, whose exclusive province is to pass upon the credibility of witnesses and the weight to be given to their testimony. If the court, therefore, had excluded the testimony complained of, the jury would not have been allowed to pass on it, and he would have been invading the province of the jury. The admission of testimony which is competent for certain purposes, over objection, does not constitute reversible error, unless a request be made to the trial court to limit the testimony to the purpose for which it was admitted. Massie v. Hutchinson et al., 110 Tex. 558, 222 S. W. 962.

If testimony is admitted, the consideration of which is proper only if the jury find certain facts to be true, the party desiring that it be considered only on such condition should request a proper charge in connection with such testimony. Pryon v. Brownfield et al. (Tex. Civ. App.) 238 S. W. 725.

[7] On special issues submitted by the court, the jury found that the appellants Moran, Reese, Patterson, and Bolding, each, in his contract for the purchase of the interest acquired by him from E. H. Breedlove on November 19, 1919, assumed and promised to pay the proportion of the then outstanding indebtedness of the Carey Bros. Oil Company chargeable to the interest purchased. On

the answer to this issue depended the liability of the appellants to contribute to the payment of such outstanding indebtedness. The testimony is sufficient to sustain the finding upon this issue against the appellants, and they do not challenge the sufficiency of the evidence to support such finding.

The record is uncontroverted that on November 19, 1919, the time of the purchase by the appellants of their respective interests, the outstanding indebtedness of the Carey Bros. Oil Company was $39,311.26.

[8, 9] Appellant Moran assigns as error the action of the trial court in admitting testimony as to the market value of the leasehold estate on November 19, 1919, because market value was not made an issue by the pleading; that its value without wells on it was immaterial and irrelevant, and such testimony was only the belief of the witness. No question is made as to the qualification of the witness, and his belief as to its value is but an expression of his opinion. Moran alleged that he paid $14,000 for the one-tenth interest he originally purchased, and that he had been induced to make the purchase by the false representations of E. H. Breedlove, and that the property at the time he acquired his interest was practically worthless.

All the appellants assign as error the action of the court in submitting to the jury the issue of the market value of the leasehold estate on November 19, 1919. The appellants who purchased from Breedlove, other than Moran, each alleged that he paid at the rate of $15,000 for one-tenth, for what he purchased, and that he was induced to make the purchase by the false representations made to him by Breedlove, and that the leasehold estate at the time he acquired his interest therein was worthless. These assignments are overruled. Willis et al. v. First National Bank of Burkburnett et al. (Tex. Civ. App.) 262 S. W. 851.

[10-12] The appellants each assign as error the action of the trial court in submitting to the jury a special issue as to whether or not he, after November 19, 1919, in any manner participated in or asserted any right in the partnership or the property, or contracted or agreed to the incurring of any debts, because the evidence was not sufficient to raise such issue or to support the findings of the jury thereon, each of which issues were answered in the affirmative.

The record shows, relative to appellant Moran, that at the time of his purchase in November, 1919, the Carey Bros. Oil Company was a going concern, and had incurred debts in the operation of its business, which were unpaid, and that he assumed his proportional part of such indebtedness; that he had been interested in the oil business to a sufficient extent to know there would be expenses connected with the operation of the property, producing and marketing oil, and he expected to pay his part of such expenses; that he purchased his interest for profits; that the pipe line company running the oil made payments once or twice a month to the parties interested in oil property; that he did not know when he discovered that a fraud had been perpetrated upon him, but it was when he heard about some of the partners having charged off their loss in the company in making their income tax returns to the government; that after he heard such reports he saw Breedlove in April or May, 1920, and told him about the reports; that Breedlove said he would straighten them up and stop a good deal of the talk, but Breedlove admitted that each of the partners suffered a loss on a basis of $2,000 for each one-tenth interest, but he had forgotten to tell Moran thereof, although he had been in Breedlove's office getting the data for making his income tax report; that Moran made no inquiry about the payments coming to him from the pipe line company for oil runs, and, if the lease had been producing 500 barrels per day, his interest would have earned as much as $7,000 from November to April; that he had never made any claim to any interest in the lease since he lost his money, and offered at some time, the date of which is not fixed, to join in the assignment to make title to the property if it could be sold for enough to discharge the indebtedness; that in November, 1921, in a suit by the First National Bank, seeking to recover against the Carey Bros. Oil Company on a debt owing to it, and in which it was sought to hold him as a partner, he had pleaded as a defense thereto the same fraud he was urging as a defense to this suit; that he took an assignment to his interest, and that the title evidenced by such assignment was still vested in him, and that, if any profits had been made he expected to participate therein, because he purchased for that purpose. He admitted that in his evidence on a former trial he had testified to Breedlove's having told him about debts against the company, and that some of the other partners had executed a note to the City National Bank for the sum of $30,000, which was used in operating expenses, and which debt was still unpaid.

The record relative to the other appellants discloses that they each purchased about November 19, 1919, and that they each knew that Carey Bros. Oil Company was a going concern, knew that it was being operated by the other partners, that there would be operating expenses, and that they would be charged with and expected to pay their proportional part of such expenses; that they discovered that a fraud had been perpetrated on them by Breedlove some time in the latter part of February; that some of them charged off the loss in the company in making their income tax returns for the year 1920; that they knew the sale of the property to the Seaboard Oil & Gas Company for the sum of $300,000 had failed; that they were not re-

(286 S.W.)

ceiving their monthly or semimonthly payments for the oil runs, and that each of these appellants employed an attorney to represent him and to make further investigation as to the fraud, and that he, on June 1, 1920, instituted suit against E. H. Breedlove for each of the appellants except Stokes, who had purchased his interest from J. J. Moran, for damages, alleging that each one-tenth interest was worth at the time of the purchase only $2,500, and seeking to recover against Breedlove the sum of $12,500 as damages for the fraud perpetrated upon him; that the suit was, at the time of the trial, still pending, but no service had been had on Breedlove because he was beyond the jurisdiction of the court; that in negotiations with Guy Rogers and W. T. Willis, they refused to join in a sale of the property, and asserted that they were holding their interest with the expectation of making some money, refused to allow the other partners to take over the property and assume the debts of the company, because the value of the property was uncertain and they were unwilling to release their interest, because if it ever made anything they expected to participate in the profits.

In connection with the issue as to whether or not the appellants after November 19, 1919, asserted any right in the property or participated in the partnership, the jury found on issues properly submitted that the appellants Moran, Reese, Patterson, and Bolding bought their respective interests with knowledge that work was being done and expenditures made on the property, and knew while they kept their interest that expenses were being made and incurred, and by the exercise of reasonable diligence could have discovered that the obligations were being incurred and created for the benefit of the property, and that none of the appellants after the discovery of the alleged fraud repudiated the contract within a reasonable time, but continued to permit their interest to be managed and operated with the interest of the other partners for the joint benefit of the company.

"A person may not withhold his claim, awaiting the outcome of an enterprise, and then, after a decided turn has taken place in his favor, assert his interest, especially where he has thus avoided the risks of the enterprise. Accordingly, if the property involved is of a speculative or fluctuating character, more than ordinary promptness is required of a claimant; he must press his claim at the earliest possible time. This rule is applied with great strictness in the case of mining property, since it is of a specially precarious nature, and is exposed to the utmost fluctuations in value." 21 C. J. p. 225.

There was no direct issue submitted, and none requested, to have the jury determine whether appellants became partners in the Carey Bros. Oil Company, or whether the indebtedness incurred by said company after November 19, 1919, was for such expenses as are usual, customary, and proper for such a business as that in which the company was engaged, and, as the evidence is sufficient to support an affirmative finding thereon, the presumption that the court so found must be indulged in favor of the judgment. It is our opinion that the testimony was sufficient to sustain these findings of the jury, and the judgment of the court in holding appellants liable as partners on the indebtedness incurred after November 19, 1919. Rick v. Farrell (Tex. Civ. App.) 266 S. W. 522; Indiahoma Refining Co. et al. v. Wood et al. (Tex. Civ. App.) 255 S. W. 212; Bivins v. Oldham (Tex. Civ. App.) 224 S. W. 240; Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, Ann. Cas. 1916E, 446; Burke-Mobray et al. v. Ellis et al., 44 Tex. Civ. App. 21, 97 S. W. 321; Cain City Farmers' Exchange et al. v. Stinston et al. (Tex. Civ. App.) 258 S. W. 252; Waugh et al. v. Hudson et al. (Tex. Civ. App.) 159 S. W. 893; Winters v. Coward et al. (Tex. Civ. App.) 174 S. W. 940; Shappirio v. Goldberg, 192 U. S. 232, 24 S. Ct. 259, 48 L. Ed. 419.

[13] Appellant J. J. Moran assigns as error the action of the trial court in refusing to submit to the jury his requested issue on his cross-action, in which he sought to recover against J. E. Trigg as a conspirator and a party to the alleged fraud perpetrated upon him by the false representations of E. H. Breedlove. This assignment cannot be sustained because, in our opinion, the evidence is not sufficient to raise any issue of fraud or conspiracy upon the part of J. E. Trigg, but if such issue had been raised by the testimony, under the findings of the jury that appellant Moran, after his discovery of the fraud, permitted the business to be operated and expenses incurred by the other partners actively engaged in the management of the business, and thereby ratified his contract of purchase, would render such issue immaterial.

[14] The appellants Reese, Patterson and Bolding present as error the action of the court in refusing to give their requested issue as to whether or not a loss greater than the income from the property occurred in the operation of the Carey Bros. Oil Company after November 19, 1919, and, if so, the amount thereof. The record discloses that each of these appellants assumed their proportional part of the outstanding indebtedness of the Carey Bros. Oil Company when he purchased his interest in the leasehold estate on November 19, 1919, and, as they were partners from that date, this issue as to said appellants was immaterial.

The appellant J. B. Stokes, the only one which did not assume the outstanding indebtedness of the company at the time he acquired his interest on November 19, 1919, made no request to have such issue submitted. Hence, if this was error, the appellants

who asked the special charge were not injured thereby and cannot complain of the refusal of the court to give it.

[15] All the other special issues requested by the appellants are sufficiently covered in the issues submitted by the court, and the assignments of error thereon are overruled.

[16] The appellants assail the action of the court in rendering judgment in favor of the interveners, because they assert the record discloses that their plea of limitation to such claims was sustained by the evidence, for which reason the interveners were not entitled to recover.

All of the appellants save J. J. Moran, who offered no objection thereto, requested the court by special charge to peremptorily instruct the jury that the claim of the interveners became due February 20, 1920. The record discloses that all of the interveners had filed petitions in this case within less than two years after that date; hence appellants are not in a position to urge such contention as reversible error.

[17] The appellants assail as error the action of the trial court in permitting the sums advanced to the partnership by the appellees to bear interest. As a general rule, unless there is an agreement to allow interest, none is allowed in contributions to the capital, because the partner must rely upon the proceeds of the business to compensate him for his investment; but, if the monies paid or advanced for the use of the firm are, in effect, loans, interest upon such advances is allowed, though there is no express agreement therefor, as such understanding is implied as well between the partners as in transactions between parties holding no partnership relation to each other. Modern Law of Partnerships, Rowley, vol 2, par. 668; Diamond v. Gust et al. (Tex. Civ. App.) 206 S. W. 367; Sherk v. First National Bank of Hereford et al. (Tex. Com. App.) 206 S. W. 507; Giddings et al. v. Harding (Tex. Com. App.) 267 S. W. 976; Tucker v. Stell, 169 Ark. 1, 272 S. W. 864; Wolf v. Levi (Ky.) 33 S. W. 418.

The court allowed interest on the advances made by the appellees at the rate of 6 per cent. only. No contention is made that the sums paid by appellees were not correct, or that they were not advances which were, in effect, loans.

[18] Appellants assign a number of errors attacking the sufficiency of the testimony to support the findings of the jury on the issue of fraud submitted by the court, but inasmuch as each of the appellants, after discovery of the fraud, according to the jury's findings, failed to repudiate his contract, and by acquiescence permitted the business of the Carey Bros. Oil Company to be operated for the joint benefit of all the partners, such issues became immaterial and do not require further consideration.

[19] Under the law of partnership, while appellant J. B. Stokes did not assume any of the outstanding indebtedness against the Carey Bros. Oil Company at the time he purchased his interest, he acquired such interest in the property subject to the payment of such indebtedness, and, as the other appellants assumed such indebtedness, there is no error in the payment on February 8, 1921, of the sum of $5,904.50 on said indebtedness, which was the proceeds of the sale under execution of all the company's assets.

[20, 21] Appellants Reese, Patterson, Bolding, and Stokes attack as error the failure of the trial court to file additional findings of fact, and set out the evidence of the items of indebtedness included in his judgment. No request was made to have such issue submitted to the jury, and a court is not required, in the trial of a case with a jury, to file findings of fact and conclusions of law. Peoples v. Terry et al. (Tex. Civ. App.) 43 S. W. 846; Schofield et al. v. Texas Bank & Trust Co. (Tex. Civ. App.) 175 S. W. 506. However, if this had been at trial before the court, his findings should not have included the evidence which he considered as establishing the facts on which his findings were based. Spearman v. Mims et al. (Tex. Civ. App.) 207 S. W. 573.

[22] Appellants assign as error the action of the trial court in allowing Guy Rogers a fee as an attorney for representing appellees, but an examination of the record will reveal that no part of this attorney's fee is charged to appellants, but that appellee Rogers had deducted from the contribution he shall make the amount of the attorney's fee, which is added to the contributions required of the other appellees, none of which is charged against the appellants. Other items allowed the appellees were questions of fact determined by the court adversely to appellants, and will not be disturbed.

[23] The appellants attack the judgment rendered because uncertain and indefinite. Under the record, the appellants Reese, Patterson, Bolding, and Moran were liable for their proportional part of the indebtedness of the Carey Bros. Oil Company outstanding on November 19, 1919, the date they purchased and assumed the payment thereof, and the said appellants and J. B. Stokes were each liable ratably with appellees for the indebtedness incurred by the Carey Bros. Oil Company after November 19, 1919, and this is the effect of the judgment rendered by the court, which is sufficiently certain and definite to protect the rights of all the litigants involved in this suit. Eastland v. Fuller (Tex. Civ. App.) 261 S. W. 386.

The transactions of the business of the Carey Bros. Oil Company, the accounts payable and the bills receivable, the character of its business, the changes in the personnel of the company, and the varying interest held by

the partners in the company and at different times, renders an accounting difficult and complicated.

"It would be an interminable task to set out these various items and show the calculations by which the court's judgment could be sustained, but we believe it to be sufficient to say that the trial court has made a reasonably fair settlement of these various transactions and is as near an·adjustment of these complicated accounts as would possibly ever be reached by another trial, and we do not feel like disturbing his findings, on that point." First National Bank of Amarillo v. Rush (Tex. Civ. App.) 227 S. W. 378.

There being no reversible error presented, the judgment is affirmed.